## ST. LOUIS COUNTY COURT vs. JOHN SPARKS.

1. A mandamus in the alternative, against a Court, may be served on the officers composing the Court in vacation, by delivering a copy of the original process. It may be addressed to the Court, or to the individuals composing it. But where the proceeding against a Court is for disobedience, the judges are to be proceeded against individually.

2. A mandamus may be issued to restore a person to an office to which he is entitled. But it cannot be issued where the office is already filled by a person holding by a color of right. In such a case a *quo warranto* is the proper remedy.

3. The appointment of a person to an office, who has not the necessary qualifications, is not void. He is *de facto* an officer, and his acts, until his removal, are valid.

4. A statute specifying the time within which a public officer must perform an official act regarding the rights or duties of another, is directory merely; unless the nature of the act, or the words of the statute shew that it was intended to be limitation of power.

5. The Circuit Courts have power by mandamus to control the actions of inferior tribunals.

*St. Louis County Court vs. Sparks.*

## APPEAL from St. Louis Circuit Court.

GAMBLE & BATES *for Appellant.*

### POINTS AND AUTHORITIES.

1. The Circuit Court had no authority or jurisdiction in the case, to issue a mandamus. See State Constitution, Art. 5, §3—4 Bac. Ab. Tit. Mandamus, p. 496—and pp. 514—15—16.

In England, the mandamus is a high prerogative writ, pertaining to the King's Bench. In Missouri, the Constitution gives it, in terms, to the Supreme Court; and neither the Constitution nor any statute gives it to the Circuit Court. And so the Circuit Court cannot exercise it in any instance, unless in support of its own granted power, to supervise inferior judicial tribunals.

The County Court of St. Louis, in appointing a collector, are no more acting *judicially*, than the people are in appointing an assessor. The power to appoint a collector is not enumerated among its granted judicial powers. R. C. 1835, p. 156.

2. There was no case presented to the Circuit Court in which a mandamus could legally issue. Under this head we present these points : —

1st. The office of collector was filled, and therefore it was not a case for mandamus, to restore the former collector. 3 John. Ca. 79.—Angell & Ameson Cor. 565, 2 T. R. 260, (old edition.)

2nd. The Relator was not by law entitled to hold the office, for many reasons apparent on the record, but especially, because it was the express duty of the Court or Clerk to make an appointment, and because he had never been legally collector. 7 Eng. Com. L. R. 245—6 Mass. R., 462.

3. There was no service of the alternative mandamus which would authorize the order for a peremptory writ of mandamus. 4 Bac. Abr. 496—514—515—516, and the act of Assembly, Dec'r 22nd, 1836, p. 72.

LESLIE *for the Appellees.*

By the law of the State passed 12th December, 1836, page 130, the County Court for St. Louis County, are empowered to appoint a respectable householder "Collector of the *Revenue*," which appointment must be made at the first term of the year. As no power is given the County Court to appoint a Collector, to be exercised at any other term, or to be exercised upon any person not having the statutory qualifications; a failure in either of these particulars leaves the incumbent in office, until superseded by the action of another appointing power mentioned in the statute; and any removal of such incumbent, except by a strictly legal appointment of a successor, is illegal and void. This statute is to be construed strictly, and no power given to the County Court by construction, and it will be seen that no construction is necessary for all contingencies are fully provided for.

The case before the Court shows that Wise had not the legal qualifications, and consequently, the incumbent was not superseded. As well might the County Court appoint an infant, a non resident, a negro, or a person outlawed or *non compos*, and then say the office was filled, as to disregard the qualifications of householder, made indispensable by the very terms of the law.

The second appointment abrogates the first, and leaves this case in contemplation of law, as if the County Court of any other County of the State, not having the power of appointment, should turn out of office the person elected by the people.

If Sparks was entitled to the office, and was turned out of it, mandamus will lay to restore

him, for there is no other specific remedy. 3 T. R. 646.—6 East. 356—2nd T. R. 259—3 Burr, 145-9—4 T. R. 369—10 Wend. 393—Minot's Digest, 466, and cases there cited. As to the propriety of the remedy, see also Bacon Abr. 4 vol., p. 500—1—2, letter C. 5 East. 14—15.

The return was rightly decided to be insufficient, because it stated conclusions of law instead of facts; and because it was in no manner responsive to the writ. S. N. P. 7—5 T. R. 66.

Scott, J., *delivered the opinion of the Court.*

The act of December 12, 1836, made it the duty of the County Court for the County of St. Louis, at the first term which should be holden in said County, in each year, to appoint a Collector of the Revenue for the said County, who should be a respectable householder in said County, and reside within the same, and should hold his office for one year, and until his successor was appointed. The second section of the act provided that if the Court at that term failed to make the appointment, then the Clerk of the County Court should make the same.

Under this act, John Sparks was appointed Collector of the said County, on the 13th March, 1843, and until his successor was appointed. Sparks qualified and entered upon the duties of his office. In March, 1844, the Court appointed Henry J. Wise the Collector for that year. It is alleged that Wise, at the time of his appointment, was not a householder. Wise entered upon the duties of his office; blank licenses were delivered to him, and Sparks was directed to make a settlement with the County Court, and to deliver possession of the office in which he transacted the business of the office, to Wise. Sparks failing to do this, he was forcibly ejected by the Marshal of the Court, under orders from the County Court. On this state of facts, Sparks applied to the Circuit Court of St. Louis County for a mandamus, compelling the County Court to restore him to the office of Collector.

On this petition the Court made a rule on the County Court of St. Louis, commanding it to restore Sparks to his office, or to show cause to the contrary.

In answer to the foregoing rule, the County Court states, that although Sparks was appointed Collector for the year 1843, yet he failed to give bond within the time prescribed by law. That Henry J. Wise was appointed Collector for the year 1844, who qualified and entered upon the duties of his office. That doubts having arisen whether Wise at the time of his appointment, possessed the qualifications required by law, the Court in April re-appointed him, all doubts relative to his qualifications for the office having been removed, and he again qualified.

There was a demurrer to the answer, which was sustained by the Court, and thereupon a mandamus in the alternative was awarded to the County Court requiring it to restore Sparks, or show cause to the contrary.

This writ was directed to the members composing the County Court, individually styling them the Justices of the County Court, and was severally served on the Justices in vacation.

On the return of this writ, the Justices severally appeared, and moved to quash it, for the reasons that the said supposed writ was no writ, it containing no statement of any grievance. That it was improperly directed, being directed to the Justices of the County Court jointly and severally, whereas it should have been directed to the Court. That it was served by delivering a copy, whereas it should have been served by delivering the original. Upon this, a motion was made for a peremptory mandamus, which was awarded, and thereupon an appeal was severally taken to this Court by the Justices of the County Court.

As to the point made relative to the service of the conditional mandamus, it may be remarked, that a mandamus in the alternative may be served on the officers composing the Court in vacation, and that a delivery of a copy of the process showing the original, is a sufficient service. The People vs. The Judges of Westchester, 4 Cow. 403. 7 Wen. 474. 1 J. R. 61. It seems it may be addressed to the Court or to the individuals composing it. 16 J. R. 61. When, however, proceedings commence against a Court for disobedience, then the Judges composing it are to be proceeded against personally. In saying that the Judges composing a Court may be served in vacation, we do not mean to be understood that any judicial act could be done by them during that time.

It has been long held that a mandamus may be issued to restore a person to an office to which he is entitled. 4 Bacon, 500. But we are not prepared to say, that this was a proper case for the interference of the Circuit Court by mandamus. Various considerations incline us to this opinion. The office was already filled by one who was *de facto* an officer, at least; and it appears to be law that when an office is already filled by a person who is in by color of right, a mandamus is never issued to admit another person, the proper remedy being an information in the nature of a *quo warranto*. The People vs. The Corporation of New York, 3 J. Ca. 79. Angel & Ames on Corporations, 565. The King vs. Mayor of Colchester, 2 Durn. & East. It would not be just that Wise's right to the office should be determined on a proceeding to which

he was no party. He was the proper person to vindicate his own rights, and a *quo warranto* was the proper mode under the circumstances to try the validity of his appointment. If the relator, Sparks, was entitled to the office in preference to Wise, yet as the Court was bound to make an appointment, and might have appointed him, or not, as they thought best, why should this Court do the nugatory act of restoring him, when the very next moment he may lawfully be superseded? When the appointing power has made an appointment, and a person is appointed who has not the qualifications required by law, the appointment is not therefore void. The person appointed is *de facto* an officer; his acts in the discharge of his duties are valid and binding. He may be guilty of usurpation, and be punished for acting without being qualified; but the peace and repose of society imperiously require that his official acts, so far as others are concerned, should be valid. This is true of the highest and lowest officers from the Governor to the Constable. Suppose a Sheriff in a County where there is much litigation, should act as such until near the expiration of his office, when he should be found disqualified and removed, what a scene of anarchy and confusion would be exhibited to the view of the community, if his acts should be held to be void? Even if Wise was disqualified, his appointment was not a nullity. A statute prescribing qualifications to an office is merely directory, and although an appointee does not possess the requisite qualifications, his appointment is not therefore void, unless it is so expressly enacted.

Was Sparks entitled to the office? It is contended for him, that the County Court having failed to make a valid appointment during the term of the Court at which by law it was required to be done, the power of appointment devolved on the Clerk, and the Court could not make it. It is evident from the terms of the law, that an appointment by the Court was preferred to one by the Clerk, as the duty of appointing was only imposed on the Clerk in the event of a failure by the Court to make it. The Collector of St. Louis receives a large sum of money, and the law was anxious that his securities should be approved once, at least, in every year. It is a rule of construction, that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, is directory merely, unless the nature of the act to be performed, or the phraseology of the statute is such, that the designation of time must be considered as a limitation of the power of the officer. The People vs. Allen, 6 Wen. Jackson vs. Hooker, 5 Cow. 269, 2 Mass. 230. There was nothing in the nature of the power of appointment showing that it might not be as effectually

exercised after the first term of the Court as before. There is no pro-hibition that it shall not be exercised afterwards. It would be strange if a statute specifying an early day at which an act must be done with a view to its speedy execution, should be construed that the act could not be done at all after the day, when the necessity for its performance is as great, if not greater afterwards than before. If the Court had failed to make the appointment in the term time, the Clerk could have made it; but clearly when the Court convened again the power of ap-pointment in the Clerk was suspended. *Cui bono* restore Sparks to an office, in which he might have been immediately replaced by another according to law? The tenure of his office was limited to a year, and until a successor was appointed. When that appointment was made he had no more right to the office than any other individual in the commu-nity. The King vs. Griffiths, 7 Com. Law Rep., 246.

A question was raised by the appellant respecting the power of a Circuit Court to award a mandamus against a County Court unless in cases in which such a power is auxiliary to its own granted power to superintend inferior tribunals. That the Constitution of the State hav-ing conferred on the Supreme Court the power to issue writs of man-damus, and no statute conferring expressly such a power on the Circuit Courts, it cannot be exercised by them. It is true that this Court can issue a writ of mandamus. It is one of the few instances in which it can exercise original jurisdiction. But there is nothing in the Constitu-tion from which it can be inferred that this power is exclusive. The oft recurring necessity for the exercise of this power, would render such a construction extremely inconvenient. To the necessity for such a writ to tribunals only inferior to the Supreme Court, we must attribute the delegation of such a power. No statute has yet attempted to designate the cases in which the writ shall go from this Court, nor shall we now attempt it. The first statute on the subject of these writs was enacted at the revision of 1825. That statute, although it does not in express terms authorize the Circuit Courts to award them, yet surely must have intended it, as its words are, " whenever any writ of mandamus shall issue out of *any Court of this State,*" &c.; now if it had been the intention of the General Assembly that this power should be exercised exclusively by the Supreme Court, it would not have employed this phraseology. The statute, with the exception of a short period, has remained in force unaltered up to this time, and the construction put upon it, and acquiesced in, has been that the Circuit Courts may issue writs of mandamus. Boone County vs. Todd, 3 Mo. Rep. 103. St.

Louis County Court vs. Ruland, 5 Mo. Rep. 270. The law establishing Courts having in pursuance of the Constitution, conferred on the Circuit Courts a superintending control over the County Courts, and as there may be many instances in which such tribunals may require such control otherwise than can be afforded according to the usages and principles of law by appeal, or writ of error, we must contend that this power must have been designed by the Constitution to have been entrusted to the Circuit Court, in order to a complete exercise of that control over them with which they have been invested. Such a construction reconciles all parts of the Constitution, and affords suitable instances for the exercise of the powers with which each has been clothed.

Judge NAPTON concurring, the judgment will be reversed.