PAUL C. WILSON, Judge.
The Children’s Division of the Missouri Department of Social Services (“Children’s Division” or “Division”) appeals from the trial court’s grant of summary judgment in favor of Melody Frye (“Mother”). The trial court ordered the Division not to include Mother’s name in the child abuse and neglect central registry because the Division failed to comply with the 90-day deadline for investigations and determinations under section 210.152.2, RSMo Supp. 2005.[1] Because this judgment imposes a sanction for the Division’s noncompliance that the legislature neither created nor approved, the judgment is vacated and the matter remanded for farther proceedings.

Background

Mother was married to Joseph Frye (“Frye”). Mother and Frye resided together with Mother’s three biological children. One of Mother’s biological minor children (“J.H.”) died May 10, 2006.
The Children’s Division received a hotline complaint on May 10, 2006, alleging Frye physically abused J.H. and this abuse resulted in J.H.’s death. On May 17, 2006, the Children’s Division received a hotline complaint against Mother, alleging she committed neglect because she knew Frye was abusive toward the three minor children but failed to supervise his conduct concerning them.
On June 27, 2006 (i.e., more than 45 days after receiving the complaint concerning Frye), the Children’s Division completed its investigation of Frye and determined that a preponderance of the evidence substantiated the complaint against him. Once this determination was affirmed by the Child Abuse and Neglect Review Board (“Review Board”), Frye’s name was added to the central registry. The state also brought criminal charges against Frye for the death of J.H. but later dismissed them.
*407 On June 8, 2006, the Children’s Division noted that its investigation into the hotline complaint regarding Mother would be extended beyond 30 days for “good cause” because the Division needed certain reports it had been unable to obtain. The Division noted in its information system additional reasons for delay between June 8 and June 27 but, between June 27 and August 25, no further updates were made. On August 25, 2006, the Children’s Division concluded its investigation and determined that a preponderance of the evidence substantiated the hotline complaint that Mother failed to superase adequately Frye’s interaction with J.H. But the Division also determined that the evidence did not substantiate the complaint that Mother failed to supervise Frye around her other two children.
On August 28, 2006, the Children’s Division sent a letter to Mother stating that the hotline complaint had been substantiated in part. Even though the Division sent this letter to the wrong address, Mother received actual notice of the Division’s determination and timely sought a hearing before the Review Board. After considering Mother’s arguments, the Review Board upheld the Division’s decision that, the evidence substantiated the allegations about Mother’s conduct.
Mother then sought de novo review of the Board’s decision in circuit court pursuant to section 210.152.6. The trial court never reached the question of whether the evidence did — or did not — substantiate allegations of Mother’s neglect. Instead, it determined that the Children’s Division “lost jurisdiction” to investigate or make a determination regarding the hotline complaint alleging Mother’s neglect because the Division failed to comply with the 90-day statutory deadline for investigations set forth in section 210.152.2. On that basis, the trial court entered judgment in Mother’s favor and ordered the Division not to include her name on the central registry. The Children’s Division appeals and, after transfer, this Court has jurisdiction. Mo. Const, art. V, sec. 10.

Standard of Review

“The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially.” ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). “Our review is essentially de novo.” Id. “Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a. matter of law.”. Am. Fed’n of Teachers v. Ledbetter, 387 S.W.3d 360, 362-63 (Mo. banc 2012).

Analysis

After completing its investigation of the hotline complaint alleging child neglect by Mother, the Children’s Division determined that some — but not all — of those allegations were supported by a preponderance of the evidence. That determination was upheld by the Review Board. When Mother petitioned the circuit court to review the Review Board’s decision, the trial court never reached the question of whether the Board erred in upholding the Division’s conclusion that the evidence substantiated .the allegations of Mother’s neglect. Instead, the trial court decided that the consequence of the Division’s failure to comply with the 90-day deadline in section 210.152.2 in Mother’s case was that the Division lost all authority to continue its investigation or to make a determination regarding the hotline complaint against mother after the 90th day. The trial court determined that the moment this 90-day deadline passed, the hotline complaint concerning Mother’s neglect must be deemed unsubstantiated no matter what the evi *408 dence gathered to date by the Division showed or did not show. Accordingly, the trial court entered judgment for Mother and ordered the Division not to list Mother’s name on the central registry. This Court disagrees.

1. Section 210.152.2 Provides No Sanction for Noncompliance, and Courts are Not Authorized to Create One

The 90-day deadline for hotline investigations in section 210.152.2 was imposed by the General Assembly. Accordingly, it is for that body — not the courts — to decide what sanction (if any) is appropriate when the Children’s Division fails to meet that deadline in a particular case. Here, the trial court erred by imposing a sanction that barred the Division from taking any action on this hotline complaint after the 90th day because the legislature did not create or approve the use of such a sanction in these circumstances.
Mother insists that the central issué in this case is what the legislature intended by its use of the term “shall” in the 90-day deadline provision in section 210.152.2. Her approach is understandable, but incorrect. “Shall” means “shall.” It unambiguously indicates a command or mandate. To suggest any other meaning is to ignore the plain language of the statute. More importantly, there is no reason to debate the sufficiency of this tautology in the present case because no one questions it. The Children’s Division does not argue— and this Court does not hold — that “shall” means “may” in sectión 210.152.2 or that the 90-day deadline in that statute is merely a suggestion and not an obligation. Accordingly, because' section 210.152.2 requires that the Division “shall” complete its investigation and notify the perpetrator of its determination within 90 days of receiving a hotline report, the Division has a clear and unequivocal duty to do so.
But Mother is not' seeking a declaration that the Division has such a duty, nor is she seeking a writ of mandamus to compel the Division to perform that duty. Instead, she contends that, because the Division failed to comply with the 90-day deadline in her case, the Division lost all authority to complete its investigation of the hotline complaint about her, and it lost all authority to make the various determinations regarding the complaint that the Division is required to make under chapter 210. Accordingly, the central issue in this case is not whether “shall” means “shall” but what sanction (if any) the legislature intended to apply when the Division fails to do what section 210.152.2 says it “shall” do.
If, as the trial court held, the legislature intended for the Division to be stripped of all authority to investigate or make a determination regarding a hotline complaint after the 90th day, then section 21Ó.152.2 is a “mandatory statute”' and this intention will be enforced. But, if the legislature has not approved this sanction or otherwise indicated that this is the intended consequence of the Division’s non-compliance in a given case, then the -statute is a “directory statute” and the trial court was wrong in creating this sanction on its own. This is the statutory construction question before the Court; not whether the word “shall” means “shall.”
When the legislature imposes a deadline or other mandate, this Court has held that courts have no authority to impose a sanction for non-compliance when the' legislature has chosen not to do so. See Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue, 896 S.W.2d 30, 33 (Mo. banc 1995) (“where the legislature fails to include a sanction for failure to do that which ‘shall’ be done,” courts are not free to impose one).[2]
*409 Farmers is merely one of the most recent and most relevant in a long line of decisions that categorize laws as either “mandatory statutes” or “directory statutes.”
Under a general classification, statutes are either mandatory or directory; a determination of their character in this respect is of first importance in their interpretation. If mandatory, in addition to requiring the doing of the things specified, they prescribe the result that will follow if they' are not done; if directory, their terms are limited to what is required to be done.
Hudgins v. Mooresville Consol. Sch. Dist, 812 Mo. 1, 278 S.W. 769, 770 (1925) (emphasis added). This line of authority is as long as this Court is old. In St. Louis Cnty. Court v. Sparks, 10 Mo. 117 (1846), this Court stated:
It is a rule of construction, that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, is directory merely, unless the nature of the act to be performed, or the phraseology of the statute is such, that the designation of time must be considered as a limitation of the power of the officer. The People v. Allen, 6 Wend.; Jackson v. Hooker [Young ], 5 Cowen 269 [ (1826) ], [Blunt v. Melcher, ] 2 Mass. [228,] 280 [ (1806) ].
Id. at 121-22 (emphasis added).[3]
In deciding whether a statute is “mandatory” or “directory,” however, the relevant statutory construction question is not whether the statute actually imposes an obligation (i.e., whether “shall” means “shall”). If the statute does not impose an obligation, the question never arises. Instead, when (but only when) a statute imposes an obligation, the statutory construction question embodied in the distinction between “mandatory statutes” and “directory statutes” is whether the legislature intended to make all actions that fail to comply with that obligation void or ineffective. This was explained more than a century ago when this Court wrote: *410 W. v. Ross, 53 Mo. 350, 354 (1873) (quoting. Sedgwick, at 369) (emphasis added).
*409 It is said that to ascertain whether a law is intended to be directory or imperative does not depend so much on the construction of the language of the law as of its application. “The statute is sufficiently clear; the only point is, what shall be the consequence of a disobedience of its directions ”
*410 As with any statutory construction question, the answer to whether a statute is “mandatory” or “directory” turns on the language chosen by the legislature. Two examples of when a statute that imposes an obligation will be construed to be “mandatory” are: (a) if the statute explicitly provides what the consequence of noncompliance will be (e.g., that any act performed after the stated deadline or in a manner different than the required method will be void or ineffective); and (b) if the statute explicitly provides that the required action can be taken only before the stated deadline or can be performed only in the stated manner. See, e.g., Ross, 53 Mo. at 354 (“the legislature has not only by the statute directed what shall be done, but has also declared what consequence shall follow disobedience”); Greene v. Holt, 76 Mo. 677, 680 (1882) (“Negative words are imperative.”) (citing Sedgwick, at 316, 320, and 325). On the other hand, if a statute imposes an obligation and does not explicitly allow only compliant actions (or explicitly declare non-compliant actions void or ineffective), the statute likely is “directory” and courts are not free to create and impose a sanction that the legislature did not approve.
Here, section 210.152.2 imposes an obligation on the Children’s Division to complete its investigation and to make its determination within 90 days of receiving a hotline complaint. But this statute does not explicitly provide that the Division may only investigate or determine hotline complaints before the 90th day, nor does it explicitly provide that the Division lacks authority to investigate or determine such complaints after the 90th day. In the absence of such legislative intent, courts have no authority to impose such a sanction on their own.
The lack of statutory approval for a sanction in the event of non-compliance with a statutory obligation, or the lack of any language permitting only acts that are in compliance with that obligation, is an important factor in drawing the important “mandatory” or “directory” distinction. In Farmers and the other cases cited above, this factor was dispositive. But this Court has noted that it is not the only factor that may be considered. In Bauer v. Transitional Sch. Dist. of City of St. Louis, 111 S.W.3d 405 (Mo. banc 2003), this Court noted cases applying the basic rule that, “where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory.” Id. at 408. But the Court also noted that “the presence or absence of a penalty provision is ‘but one method’ for determining whether a statute is directory or mandatory.” Id. at 408. The Court’s authority for this observation was Sw. Bell Tel. Co., Inc. v. Mahn, 766 S.W.2d 443, 446 (Mo. banc 1989), which stated that the “absence of a penalty provision does not automatically override other considerations.”[4] Ultimately, whether a statute is mandatory or *411 directory is a “function of context and legislative intent.” Bauer, 111 S.W.3d at 408 (citing Farmers, 896 S.W.2d at 32).
Here, nothing in section 210.152.2, or elsewhere in chapter -210, states that the Children’s Division may only investigate or determihe hotline complaints before the 90th day or that the Division loses its authority to continue an investigation or make a determination regarding a hotline complaint when the 90-day deadline has come and gone. Instead, section 210.152.2 provides only that:
Within ninety days after receipt of a report of abuse or neglect that is investigated,[5] the alleged perpetrator named in the report ... shall be notified in writing of any determination made by the division based on the investigation.
§ 210.152.2 (emphasis added).
Unable to identify any language in section 210.152.2 that creates Or approves the sanction imposed by the trial court in this case, Mother relies on section 210.145.14, which states:
The division shall complete all investigations within thirty days, unless good cause for the failure to complete the investigation is documented in the information system. If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation. The information in the information system shall be updated to reflect any subsequent findings, including any changes to the findings based on an administrative or judicial hearing on the matter.
§ 210.145.14 (emphasis added). By its plain language, this statute says nothing about the 90-day deadline in section 210.152.2. More importantly, section 210.145.14 does not even approve a sanction for cases in which the Division fails to comply with the statutory obligation to note “good cause” when it exceeds the 30-day deadline in that statute. Accordingly; section 210.145.14 does not support the trial court’s conclusion that the legislature intended for the Children’s Division to lose all authority to investigate or make determinations regarding a hotline complaint after the 90th day.
Not only is the trial court’s decision not supported by any express language in sections 210.145.14 or 210.152.2 (or elsewhere in chapter 210), it is. contrary to the obvious intent of the legislature expressed throughout the Child Abuse Act. The trial court’s decision was based on its conclusion that the Children’s Division loses all authority to continue an investigation or make a determination after the 90th day. But the scope of the Children’s Division’s authority to do these things is not the subject of section 210.152.2. Instead, that authority is established in section 210.109.2:
The child protection system shall promote the safety of children and the integrity and preservation of their families by conducting investigations or family assessments and providing services in response to reports of child abuse or neglect.
§ 210.109.2 (emphasis added).
Nothing in this statute purports to limit the Division’s authority to a 90-day window, and nothing suggests that such a limitation is imposed (or reasonably may be inferred) elsewhere in chapter 210. If the legislature intended for the grant of investigative authority in section 210.109.2 to be contingent on compliance with the deadlines in sections 210.152.2 and *412 210.145.14, it would have said so. It did' not. The absence of such a limitation weighs strongly against the trial court’s conclusion that the legislature intended for the Division to be stripped of its authority the moment- it fails to comply with the 90-day deadline in section 210.152.2.
The trial court’s decision also fails to credit the importance that the legislature attaches to the Children’s Division’s investigative role. The “determination” referred to in section 210.152.2 is a “determination made by the division based on the investigation,” not a default determination that a court says must be deemed to occur because the Division loses all authority to act after the 90th day. In addition, under section 210.145.14 (which is the legislature’s only explicit statement about the permissible length of the Division’s investigations), the Division is explicitly permitted to extend an investigation for “good cause.”[6] Not only is there no restriction on the length of such extensions, the statute explicitly provides that all extended investigations should be pursued to “completion.” § 210.145.14. This provision would make no sense if, as the trial court held, the Division loses all authority to investigate or make a determination regarding a hotline complaint after the 90th day and all unresolved complaints must be deemed unsubstantiated at that time.[7]
Section 210.152.2, and the whole of the Child Abuse Act in chapter 210, is a remedial statute, and such statutes are to be “construed so they provide the public protection intended by the legislature.” Ross v. Dir. of Revenue, 311 S.W.3d 732, 735 (Mo. banc 2010) (emphasis added). In Jamison v. Dep’t of Social Services, 218 S.W.3d 399, 410 (Mo. banc 2007), this Court recognized that the legislative purpose behind the Child Abuse Act is to protect the victims of child abuse or neglect and any other children with whom the perpetrator may come into contact. See § 210.109.2 (purpose of the Act is to “promote the safety of children .... by conducting investigations ... and providing services in response to reports of child abuse or neglect”). Accordingly, the question of what sanctions (if any) the legislature has created or approved for use in the event the Children’s Division fails to comply with the 90-day deadline in section 210.152.2 must be answered in the context of — and in a way that is faithful to — this remedial purpose. The trial court’s decision in this case fails to do so.
By imposing a sanction that deprives the Children’s Division of its authority to investigate or determine hotline complaints after the 90th day, the trial court’s decision subordinates the Act’s purpose of protecting victims of child abuse and neglect to *413 the interests of alleged perpetrators. The legislature, of course, is free to make that choice and impose such a sanction when the Division fails to comply with the 90-day deadline. But that choice belongs to the legislature, not the courts, and nothing in section 210.152.2 (or else where in the Act) indicates that the legislature intended to make that choice or impose that sanction. Instead, by requiring every determination that the Division makes to be “based on the investigation,” section 210.152.2 demonstrates the legislature’s intention that the best way to protect the victims of child abuse and neglect is to value complete investigations over arbitrary deadlines.
The basic premise of Mother’s argument is that the legislature’s intention to strip the Children’s Division of all authority to investigate or determine hotline complaints after the 90th day is implicit in the legislature’s use of the word “shall” in section 210.152.2 when it imposed the 90-day deadline. In other words, because the legislature imposed this mandatory deadline, Mother contends that the Court should infer that the legislature meant to rescind the Division’s otherwise unlimited authority to investigate and determine hotline complaints the moment the deadline passes. This is precisely the argument this Court rejected in Farmers.
In Farmers, the director of revenue denied a taxpayer’s request for a refund. Conceding that the director has authority to decide whether to refund claims generally, the taxpayer claimed the Director lost that authority by failing to comply with a statutory requirement that the determination must be made within 120 days of the refund request. Farmers, 896 S.W.2d at 32-33. The taxpayer argued that because the statute said the Director “shall” give such a notice, the legislature must have intended for- the Director to lose all authority to refuse refund requests after 120 days. As a result, the taxpayer argued that any request still pending after that deadline must be deemed approved. Id. at 32. The Court not only rejected that argument as inconsistent with prior cases holding that the legislature’s failure to include an express sanction for non-compliance precludes courts from creating one, it also pointed out the absurd consequences that Such a result would likely produce:
[W]e presume that taxpayers are better served by well-considered, though tardy responses to their claims for refund by the Director. Given time to contemplate, the Director may decide in the taxpayer’s favor, avoiding the necessity and expense of further litigation. If Farmers’ reading of the statute were correct, we imagine the Director would be forced to issue blanket denials of all claims for refund that reach the 120-day stage in order to avoid the automatic refunds Farmers claims the statute demands.
Id. at 33 (emphasis added). See also Sparks, 10 Mo. at 122 (noting: “It would be strange if a statute- specifying an early day at' which an act must be done with a view to its speedy execution, should be construed that the act could not be done at all after the day when the necessity for its performance is as great, if not greater, afterwards than before.”) (emphasis added).
Using this same logic, it is not difficult to foresee the effects if the Court were to affirm the trial court’s ruling in this case. Faced with a 90-day deadline and no authority to investigate or determine hotline complaints after that date, the Division will have a great incentive to stop each investigation as soon as the allegations of abuse or. neglect are substantiated (even minimally). This would allow the Division to communicate its decision to the alleged perpetrator prior to the deadline and keep *414 looking for evidence to support the Division’s determination in the hopes that it could be used to supplement the record before the Board and/or during judicial review. As in Farmers, such a result serves no one.
The rationale for the “mandatory” vs. “directory” dichotomy, and the purpose served by that analysis, is to ensure that decisions regarding what sanctions (if any) are appropriate when a party fails to comply with a statutory deadline or other obligation are legislative decisions — no more or less than the decision whether to impose such an obligation at all. Here, the choice of what sanction (if any) to apply when the Children’s Division fails to comply with the 90-day deadline in section 210.152.2 does not belong to the courts any more than it is up to the courts to decide whether to impose a deadline to begin with. Both choices belong exclusively to the legislature. Here, the trial court’s decision runs afoul of this rule because nothing in section 210.152 (or in section 210.145 or elsewhere in the Child Abuse Act) suggests that the legislature intended to strip the Division of all authority to investigate and determine hotline complaints after the 90th day, or to require that all pending complaints be deemed unsubstantiated at that time regardless of the evidence in hand or in prospect. Accordingly, the judgment is vacated and the case remanded for further proceedings on Mother’s petition.[8]

II. A Sanction Requiring Reports to be Deemed Unsubstantiated after 90 Dags is Not Required to Protect Mother’s Due Process Rights

Mother claims that the Children’s Division’s failure to comply with the 90-day deadline in section 210.152.2 violated her constitutional rights to due process and that this violation justifies the trial court’s decision to impose the sanction it did even though it was not approved by the legislature. This claim lacks merit.
In Jamison, this Court held that constitutional rights to due process protect against deprivation, not investigation, and that due process is satisfied for purposes of the Child Abuse Act and the central registry when an alleged perpetrator is given notice and an opportunity to be heard before his or her name can be listed in that registry. Jamison, 218 S.W.3d at 410. Here, despite the Division’s determination that some of the allegations of child neglect by Mother were substantiated, her name never has been included in the central registry. She has suffered no deprivation of a property or liberty interest to date, and, as a result, her hearing before the Board and the de novo judicial review of the Board’s decision are exactly the sort of pre-deprivation protections that Jami-son holds fully satisfy the demands of due process.
Whether an individual has a due process right to control the length or breadth of an administrative investigation is no longer an open question:
*415 The opinion of the Court in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), leaves no doubt that neither the Due Process Clause of the Fifth Amendment nor the Confrontation Clause of the Sixth Amendment is offended when a federal administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence adverse to him. The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights....
S.E.C. v. Jerry T. O’Brien, Inc., 467 U.S. 735, 742, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) (emphasis added, citations omitted).
In Artman v. State Bd. of Registration for Healing Arts, 918 S.W.2d 247, 251 (Mo. banc 1996), this Court relied on O’Brien to hold that due process protections are not necessary during a state administrative agency’s investigation because no legal rights are being adjudicated. Under Art-man and O’Brien, therefore, Mother has no due process right to be free from the Division’s investigation of the hotline report regarding her and no due process right to have such an investigation start or stop at any particular tinie. In fact, even if section 210.152.2 imposes a 90-day deadline on such investigations, a “violation of state procedures does not automatically equate to a violation of due process rights.” Mann v. Vogel, 707 F.3d 872, 881-82 (7th Cir.2013).
Here, Mother does not (and cannot) claim she suffered any actual prejudice by the 13-day delay between the 90-day deadline that she claims terminates the Division’s authority to determine the hotline complaint against her and the date she received notice of the Division’s determination that some, but not all, of the allegations in that complaint were substantiated by the evidence gathered in its investigation. For example, she does not claim that her ability to defend against these allegations was compromised by this delay, or that the Division made the wrong determination in her case as a result of this delay, or that the Division’s delay was motivated by animus or a desire to torment her. Though it may be conceivable that an investigation could continue so long that such prejudice could occur, that is not the case here.
This lack of prejudice not only dooms Mother’s constitutional claim, it underscores the weakness of the claim rejected in the preceding section of this opinion. Ik State ex rel. State v. Parkinson, 280 S.W.3d 70, 76 (Mo. banc 2009), this Court refused to apply a sanction for an administrative agency’s failure to do that which a statute said it “shall” do. In so holding, the Court noted the absence of prejudice to the individual seeking that sanction. Id. at 77. See also Garzee, 639 S.W.2d at 832 (statute requiring that notice of foreclosure sale “shall” be mailed voided the sale of homeowner’s property that occurred without such notice — even though such a sanction was not explicitly approved in the statute — because the lack of actual notice was so prejudicial to homeowner that it violated due process); Schlafly v. Baumann, 341 Mo. 755, 108 S.W.2d 363, 366 (1937) (statute stating that tax sales of land “shall” occur on a particular day precluded sales on other days even though such a sanction was not explicitly provided because “[d]ue diligence on such date should avail land owners of information concerning any proceedings against their real estate for the collection of delinquent taxes”).
The lack of prejudice to the alleged perpetrators when the Children’s Division extends its investigation beyond 90 days before it decides whether a preponderance of the available evidence does (or does not) substantiate the allegations in the hotline *416 complaint may explain why the legislature chose not to approve the sanction imposed by the trial court here. Until the Division completes its investigation of a. hotline report of child abuse or neglect, the Child Abuse Act recognizes that all interests— those of the child, the alleged perpetrator, the parents, and society as a whole — are the same. At that point, what matters most is that the Division makes a fully informed and accurate determination as to whether abuse or neglect was committed and, if so, by whom.
Mother may claim an interest in truncating that investigation now, but that is only because she knows what the Division’s determination was in the end. If the Division had discovered evidence on day 99 that had exonerated her completely, every interest — including Mother’s — would have been served by that delay. It does not matter that the Division did not find that sort of evidence here; the legislature makes its decisions'without the benefit of such hindsight.
It is only after the Division completes its investigation and notifies the relevant parties of its determination that the various interests can diverge. If the allegations are substantiated, the alleged perpetrator has an interest in challenging the Division’s determination before he or she suffers the loss óf liberty or property that may result from being listed in the central registry. Jamison and sections 210.152.4 and 210.152.6 protect that interest with pre-deprivation administrative review and de novo judicial review, and the legislature provides such procedures to ensure that no one is listed in the central registry unless a preponderance of the evidence substantiates their acts of child abuse or neglect and that everyone whose acts are substantiated will be listed in the registry.
The trial court’s ruling, if affirmed, would allow an alleged perpetrator to avoid being listed in the central registry on a basis that the legislature did not authorize and never could have envisioned. By imposing such a sanction, this ruling destroys the separation between the distinct pre- and post-determination phases that the legislature intended and the Child Abuse Act provides. Because such a rule would force the Division to decide some cases sooner and with less information than it should, it fails to protect the interests of those current and future victims of child abuse or neglect as well as the interests of those falsely accused of such acts.

Conclusion

For the reasons stated above, the Court vacates the judgment in favor of Mother and remands this case.
RUSSELL, C.J., BRECKENRIDGE, and STITH, JJ., concur; DRAPER, J., dissents in separate opinion filed; FISCHER and TEITELMAN, JJ., concur in opinion of DRAPER, J.

. All statutory citations are to RSMo Supp. 2013, with the exception of citations to §§ 210.145.14 and 210.152.2. Citations to these statutes are to RSMo Supp.2005, which is the version in effect on May 17, 2006, when the Division received the hotline report of child neglect by Mother.

. See also State v. Tisius, 92 S.W.3d 751, 770 (Mo. banc 2002) (“where a statute or rule *409 does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory”); State ex rel. Rogersville Reorganized Sch. Dist. No. R-4, of Webster Cnty. v. Holmes, 363 Mo. 760, 253 S.W.2d 402, 404 (1952) ("... if nothing is stated regarding the consequence or effect of non-compliance, the indication is all the stronger that it should not be considered mandatory.”); State ex Inf. Mitchell ex rel. Goodman v. Heath, 345 Mo. 226, 132 S.W.2d 1001, 1003 (1939) ("If a statute merely requires certain things to be done and nowhere prescribes the result that shall follow if such things are not done, then the statute should be held to be directory."); State ex Inf. McAllister ex rel. Lincoln v. Bird, 295 Mo. 344, 244 S.W. 938, 939 (1922) (same).

. This quote and the citations to the New York and Massachusetts decisions that follow it are taken from Justice Theodore Sedgwick's treatise about the interpretation and construction of statutes and constitutional provisions. See Theodore Sedgwick, A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law, at 320-21 (2d ed. 1874) (with notes by John Pomeroy) (referred to herein as “Sedgwick”). Justice Sedgwick was a member of the Continental Congress in 1780, United States Senator in 1798, Speaker of the House of Representatives in 1800, and a member of the Massachusetts Supreme Judicial Court. His treatise, which was one of the touchstones of this Court’s early jurisprudence, remains available — and useful[1] — today.' See State v. Honeycutt, 421 S.W.3d 410, 419 (Mo. banc 2013).

. The example the Court cited Mahn was Garzee v. Sauro, 639 S.W.2d 830, (Mo. banc 1982), in which the due process principles in Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) justified the conclusion that a notice statute was mandatory rather than directory despite the legislature’s failure to include any express sanctions for non-compliance. Mahn, 766 S.W.2d at 446 (citing Garzee, 639 S.W.2d at 832). Finally, relying on this language in Mahn, a plurality of this Court in State v. Teer, 275 S.W.3d 258, 261 (Mo. banc 2009), held that a criminal conviction resulting from a violation of the statutory requirement that prior offender status be pleaded and proved before the case is submitted to the jury could not be affirmed merely because the statute did not expressly state the proper sanction for non-compliance.

5. The phrase limiting the statute's application to each report "that is investigated” is a reference to the fact that, when each report is received, the Division must decide whether to investigate or conduct a.family assessment. See §§ 210.109.2 and 210.115.4.

. Mother does not challenge the sufficiency of the good cause identified by the Division and recorded in its information system. Nor would such a claim have succeeded, for the reasons set forth in the companion case Williams v. Department of Social Services, 440 S.W.3d 425, 2014 WL 3107446 (Case No. 93653) (Mo. banc 2014). The judicial review authorized by section 210.152.6 extends only to the decision made by the Board and, under section 210.152.4 and .5, the Board is authorized only to decide whether the Division’s determination is supported by a preponderance of the evidence and whether it is against the weight of the evidence.

. Not only does it appear that the Child Abuse Act values complete investigations and well-informed determinations over arbitrary deadlines, but there also is no reason to conclude that these deadlines were included for the benefit of alleged perpetrators. It seems far more likely that the deadlines were intended to protect the present (and potential future) victims of child abuse or neglect by requiring prompt action and resolution of each hotline complaint. This makes the trial court’s imposition of a sanction that sacrifices that purpose to the interests of a perpetrator about whom the allegations already have been substantiated even more out of step with the legislative intent behind the Act as a whole.

. During the 2013 legislative session, the General Assembly passed bills amending sections 210.145 and 210.152. As of the date of this opinion, however, the fate of these bills is uncertain because the Governor has not vetoed or approved these bills and the time for doing so has not expired. Because the Court’s decision is based on the law in effect at the time of the events at issue, these amendments would not have been controlling in this case even if these bills had been in effect at the time of this decision. But it is worth noting that these amendments do not address what sanction (if any) the legislature intends to be imposed when the Children’s Division fails to comply with the deadlines in these statutes and, therefore, these amendments would not have changed the analysis in this case even if they had been applicable.

. The principles expounded upon in Sedg-wick’s treatise, while applicable, are difficult for citizens to locate; the Missouri’s Supreme Court library does not maintain a copy of any of his treatises for citizens. However, this Court still recognizes his writing as influential in our decision making. See State v. Honeycutt, 421 S.W.3d 410, 419-20 (Mo. banc 2013).