## Michael OWEN, Respondent,

v.

## MISSOURI DEPARTMENT OF SO-CIAL SERVICES, CHILDREN'S DIVISION CHILD ABUSE AND NE-GLECT REVIEW BOARD, Appellant.

### WD 80710

Missouri Court of Appeals,
Western District.

OPINION FILED: December 19, 2017

Allan Seidel, Trenton, MO, Attorney for Respondent.

Joshua D. Hawley, Attorney General, D. John Sauer, First Assistant and Solicitor, and Ross A. Kaplan, Assistant Attorney General, Jefferson City, MO, Attorneys for Appellant.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Lisa White Hardwick and Edward R. Ardini, Jr., Judges

Mark D. Pfeiffer, Chief Judge

The Missouri Department of Social Services, Children's Division ("Children's Division"), appeals from the judgment of the Circuit Court of Cole County, Missouri ("circuit court"), which concluded as a matter of law that the Children's Division exceeded its authority and ordered the Children's Division to remove Michael

Owen's ("Owen") name from the Central Registry.[1] Because the Children's Division was acting within its statutory authority to conduct investigatory proceedings relating to a report of child abuse against a Missouri child committed outside the State of Missouri, we reverse the circuit court's judgment and remand for further proceedings consistent with our ruling today.

## Factual and Procedural History

In July 2015, K.O. and E.O., minor children, sisters, and Missouri residents, visited their father in Nebraska. K.O. was then thirteen years old. During their visit to Nebraska, their uncle, Owen, came to see them. Owen is a Nebraska resident. Owen, who knew that his nieces were Missouri residents, is alleged to have sexually abused K.O. when he came to visit his nieces during the Nebraska visit.

Owen's alleged abuse of K.O. was first reported in Missouri. On August 31, 2015, Missouri's Child Abuse Neglect Hotline received a call alleging that Owen had sexually abused K.O. and that the alleged incident had occurred in Nebraska. The Children's Division responded by conducting an investigation. The Children's Division notified Owen in September that he had been named as the alleged perpetrator of sexual abuse. In November, the Children's Division notified Owen that the result of its investigation was that

the Children's Division had determined by a preponderance of evidence that Owen had sexually abused K.O. and that Owen had the right to an independent review of the decision by filing a timely request for administrative review or direct judicial review. Owen requested administrative review of the Children's Division's investigation by Missouri's Child Abuse and Neglect Review Board ("CANRB"). On July 25, 2016, CANRB notified Owen that, after reviewing the information Owen and the Children's Division had provided, CANRB upheld the Children's Division's finding; and that Owen's name had been entered in Missouri's Central Registry.

■ Thereafter in September 2016, Owen filed a petition for trial *de novo* of the CANRB decision. Prior to trial, Owen filed a pre-trial motion seeking the circuit court's declaration of law that the Children's Division lacked "jurisdiction" to administratively investigate Owen's out-of-state conduct perpetrated upon a minor child having permanent residency in the State of Missouri and to, ultimately, add his name to Missouri's Central Registry.[2] As relief, Owen requested the circuit court to enter judgment on the pleadings, dismiss the Children's Division investigatory proceedings, and order Owen's name removed from the Central Registry.[3] The circuit court concluded as a matter of law

---

1. The Children's Division maintains a central registry designed to protect Missouri minor children from abusive adults. § 210.109.3(1). The central registry is "a registry of persons where the [Children's D]ivision has found ... by a preponderance of the evidence ... that the individual has committed child abuse or neglect[.]" § 210.110(3) RSMo 2016. The names on the registry are, for example, available to childcare employers in Missouri.

2. Owen has not, however, ever argued that Missouri's Child Abuse Act is unconstitutional as applied to him and, hence, our ruling today

does not address any issues touching upon the constitutionality of Missouri's Child Abuse Act as applied to Owen in the present case.

3. "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings" and "[t]he well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007).

that the proceedings conducted by the Children's Division were not authorized by statute or otherwise, granted Owen's motion, and entered judgment in favor of Owen—specifically directing that Owen's name be removed from the Central Registry.

The Children's Division timely appealed.

## Standard of Review

"A trial *de novo*, although in theory an appeal of the administrative hearing, is an original proceeding and is not an exercise of review jurisdiction." *C.S. v. Mo. Dep't of Soc. Servs.*, 491 S.W.3d 636, 643 (Mo. App. W.D. 2016) (internal quotation omitted). "When the determination of the [Children's Division] is challenged and the alleged perpetrator seeks *de novo* judicial review in the circuit court, that court conducts a fresh hearing on the matter and is not limited in any way by the previous decisions of the [Children's Division]." *Pet et v. State, Dep't of Soc. Servs., Div. of Family Servs.*, 32 S.W.3d 818, 821 (Mo. App. W.D. 2000). "In that *de novo* review proceeding, the alleged perpetrator is afforded the opportunity for a full hearing on all issues." *Id.* However, "[i]ssues involving the interpretation of statutory language are questions of law, not judicial discretion." *Id.* at 822. Where a circuit court has granted judgment on the pleadings as a matter of its interpretation of the law, such "grant of judgment on the pleadings is reviewed *de novo*" by the appellate courts. *Bell v. Phillips*, 465 S.W.3d 544, 547 (Mo. App. W.D. 2015) (internal quotation omitted).

## Analysis

The Children's Division raises two points on appeal, asserting in both that the circuit court erred in concluding as a mat-

ter of law that the Children's Division did not have authority to place a non-Missouri resident on Missouri's Central Registry when the non-resident allegedly sexually abused a Missouri child outside the boundary of Missouri. In the Children's Division's first point, it claims that its authority to do so is plainly authorized by the Missouri Child Abuse Act and is fully consistent with the requirements of due process. In its second point, it claims that Owen waived his right to object to the Children's Division's authority to conduct the subject investigatory proceedings because Owen failed to timely raise the defense of personal jurisdiction and, instead, actively consented to the jurisdiction of Missouri forums. We conclude the first point is dispositive of the appeal.

## Point I

The Missouri legislature has enacted a statutory scheme (the Child Abuse Act) authorizing the Children's Division to establish a child protection system for the State of Missouri to "promote the safety of children and the integrity and preservation of their families by conducting investigations or family assessments and providing services in response to reports of child abuse or neglect." §§ 210.109.1, 210.109.2.[4] In implementing the child protection system in Missouri, the Children's Division is authorized to, among other things, maintain a central registry and to receive reports and establish and maintain an information system that operates at all times and is capable of receiving and maintaining reports. § 210.109.3. Of significance, the purpose of Missouri's Child Abuse Act is remedial—not punitive. Pursuant to this Act, Missouri's Children's Division is not haling out-of-state child abusers into Missouri to attempt to take away their liberty interest; rather, the Children's Division is

---

4. All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

conducting investigations of abuse perpetrated upon Missouri minor children—regardless of who perpetuated the abuse or where the abuse occurred—in order to take steps to protect Missouri minor children while within our state from further abuse at the hands of perpetrators originating from any territorial origin.

In practice, then, when a person or official "with responsibility for the care of children has reasonable cause to suspect that a child has been or may be subjected to abuse ... that person shall immediately report to the [Children's D]ivision[.]" § 210.115.1. Mandatory reporters may also report the suspicion of abuse to any law enforcement agency or juvenile office, but such report does not take the place of reporting to the Children's Division. § 210.115.7. If a mandatory reporter "has reason to believe that the victim of such abuse ... was injured as a result of *an act which occurred in another state*," the mandatory reporter "*may,* in lieu of reporting to the Missouri [C]hildren's [D]ivision, make such a report to the child protection agency of the other state with the authority to receive such reports pursuant to the laws of such other state." § 210.115.8 (emphasis added). "If such agency accepts the report, no report is required to be made, but *may* be made, to the [Missouri C]hildren's [D]ivision." *Id.* (emphasis added). The mandatory reporter is relieved of the requirement to report abuse that occurred in another state to the Children's Division only if the other state accepts the report. Even if the other state accepts the report, the mandatory reporter *may* still report the abuse to the Missouri Children's Division. The Child Abuse Act also provides that, in addition to mandatory reporters, "any other person *may* report ... if such person has reasonable cause to suspect that a child has been or may be subjected to abuse[.]" § 210.115.5 (emphasis added).

Here, the plain and ordinary meaning of the statutory language authorizes the Division to receive and act upon reports of the sexual abuse of a Missouri minor child that occurred in another state. *See Bateman v. Rinehart,* 391 S.W.3d 441, 446 (Mo. banc 2013) ("The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language."). It would be incongruous that the legislature would authorize persons to report to the Missouri Children's Division child abuse of a Missouri minor child occurring in another state if it did not intend the Missouri Children's Division to act upon such report. A contrary interpretation would fail to harmonize all provisions of the statute, as we are required to do. *See Kersting v. Replogle,* 492 S.W.3d 600, 603 (Mo. App. W.D. 2016) ("When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." (internal quotation omitted)).

The Children's Division maintains an information system with the ability to receive reports of child abuse over a statewide toll-free number. § 210.145.1(4). Upon receipt of a report of abuse by the telephone hotline, if the Children's Division determines the report merits investigation, the report is communicated to its local office staff, which determines whether an investigation should be conducted. § 210.145.3.

If the Children's Division receives a report of abuse and, after investigation, determines by a preponderance of the evidence that abuse exists, the Children's Division must notify the alleged perpetrator of that decision, that the alleged perpetrator's name will be placed on the Missouri Central Registry, and that the alleged perpetrator has sixty days to seek

administrative review of the Children's Division's determination by the CANRB. §§ 210.152.2, 210.152.4.[5] The CANRB provides an independent review of the child abuse determinations in instances in which the alleged perpetrator is aggrieved by the Children's Division's decision. § 210.153.1. If the alleged perpetrator is aggrieved by the decision of the CANRB, the alleged perpetrator may seek *de novo* judicial review. § 210.152.6. "*If the alleged perpetrator is not a resident of the state,* proper venue shall be in Cole County." *Id.* (emphasis added).

The circuit court's legal conclusion that the Children's Division's "authority" to investigate and, ultimately, list individuals on the Central Registry cannot reach conduct of non-residents alleged to have occurred outside the State of Missouri would render this venue provision meaningless and superfluous, contrary to the rules of statutory interpretation. "This [c]ourt must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman*, 391 S.W.3d at 446.

Accordingly, considering sections 210.115.8 and 210.152.6 together, Missouri's Child Abuse Act contemplates: (1) reporting of out-of-state abuse of a Missouri minor child to the Children's Division; and (2) administrative and judicial review procedures contemplating "proper venue" for a non-resident alleged perpetrator. Thus, Missouri's Child Abuse Act contemplates the exercise of administrative investigative authority of the Children's Division's over non-residents abusing Missouri minor children outside Missouri. Indeed, "the whole of the Child Abuse Act in chapter 210, is a remedial statute, and such statutes are

to be construed so they provide the public protection intended by the legislature." *Frye v. Levy*, 440 S.W.3d 405, 412 (Mo. banc 2014) (internal quotation omitted).

In *Jamison v. State, Department of Social Services, Division of Family Services*, 218 S.W.3d 399 (Mo. banc 2007), the Missouri Supreme Court held that constitutional rights to due process protect against deprivation, *not investigation*, and that minimum procedural due process standards are satisfied for purposes of the Child Abuse Act and the Central Registry when an alleged perpetrator is given notice and an opportunity to be heard before his or her name can be listed in that registry. *Id.* at 410. While the legislature has chosen to provide more limited administrative procedural protections, it has provided, upon request of the alleged perpetrator, a *de novo* review. *Id.* at 414. "*Jamison* and sections 210.152.4 and 210.152.6 protect that interest with pre-deprivation administrative review and *de novo* judicial review, and the legislature provides such procedures to ensure that no one is listed in the central registry unless a preponderance of the evidence substantiates their acts of child abuse or neglect *and* that everyone whose acts are substantiated will be listed in the registry." *Frye*, 440 S.W.3d at 416. "[D]ue process is satisfied for purposes of the Child Abuse Act and the central registry when an alleged perpetrator is given notice and an opportunity to be heard before his or her name can be listed in that registry." *Id.* at 414 (citing *Jamison*, 218 S.W.3d at 410). Here, not only was Owen given notice of the allegations and given an opportunity to be heard, he took advantage of the opportunities to be heard within the

---

**5.** In addition to section 210.152, the administrative appeal process is outlined in 13 CSR 35-31.025 (10/31/16).

administrative and judicial tribunals of the State of Missouri.[6]

The circuit court erred as a matter of law in concluding that the Children's Division lacked authority to investigate Owen's out-of-state abuse of a Missouri minor child and to enter Owen's name on Missouri's Central Registry.

Point I is granted.

## Conclusion

The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings consistent with our ruling today.

Lisa White Hardwick and Edward R. Ardini, Jr., Judges, concur.

---

**6.** As the Children's Division points out, Owen actively sought administrative protections from the Children's Division's investigatory review procedures, and it was only *after* he disagreed with the ultimate administrative review conclusions that he complained of "jurisdictional" defects in the administrative procedures of Missouri's Child Abuse Act. Owen did *not* seek a writ of prohibition to prohibit the Children's Division from exercising any sort of personal jurisdiction over him. See *State ex rel. Miss. Lime Co. v. Mo. Air Conservation Comm'n*, 159 S.W.3d 376, 381 (Mo. App. W.D. 2004) (noting that an exception to the constitutional and statutory constraints placed on judicial review of administrative action is the power of the courts to issue and determine original and remedial writs against administrative entities). Instead, after he disagreed with the actions of the Children's Divi-

sion and without citing any precedent to the circuit court or this court, Owen belatedly argues that Missouri's Child Abuse Act cannot assert "jurisdiction" over him merely because he is a non-resident and his acts of alleged abuse occurred in Nebraska. However, the U.S. Supreme Court has rejected such conclusory jurisdictional arguments in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "[Personal] [j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.... So long as [the actor's actions] are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 476, 105 S.Ct. 2174.