**In the Matter of Carlita C. TODD, a person alleged to be mentally ill.**

No. 55832.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 20, 1988.

Lindell P. Dunivan, Farmington, for appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., St. Louis, for respondent.

PER CURIAM:

Carlita C. Todd was ordered committed to Southeast Missouri Mental Health Cen-

ter for a period not to exceed twenty-one days on December 1, 1988, after an evidentiary hearing that day where the trial court found pursuant to § 632.335 RSMo 1986 that she had a mental illness and that, as a result, she presented the likelihood of serious physical harm to herself or to others. Carlita C. Todd appeals. She claims there was no clear and convincing evidence either that she presented a likelihood of serious physical harm to herself or to others or that the Southeast Missouri Mental Health Center was the least restrictive environment.

The appeal was filed on December 1, 1988. This court ordered the appeal expedited as provided for by § 632.430.1 RSMo 1986. (All further statutory references are to RSMo 1986, unless otherwise indicated). We shortened the briefing cycle and docketed the case for oral arguments on December 16, 1988, in compliance with the statute. After arguments were heard, the court entered an order affirming the judgment. This opinion follows.

The familiar standard of review of a court-tried case is that the judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or erroneously applies the law. Murphy v. Carron, 536 S.W.2d 30, 32[1] (Mo. banc 1976). "Substantial evidence" as used in Murphy v. Carron means clear and convincing when that standard of proof is applicable. In the Matter of Michael O'Brien, 600 S.W.2d 695, 697–98 (Mo.App.1980). Thus, if it can be said that the judgment in this case is supported by clear and convincing evidence required by section § 632.335.4, then the judgment is supported by substantial evidence and must, under Murphy v. Carron, be affirmed. We affirm the judgment of the trial court.

The episode giving rise to appellant's involuntary commitment occurred on September 8, 1988. Appellant, who resided in Grundy County, went to Willow Springs in Howell County where she threw eggs at a house and various businesses. She also broke out some windows with a tire iron at the house. She admitted she "deliberately committed acts of civil disobedience." Her apparent motivation was to bring attention to some changes needed in public school education. After her egg-throwing spree, members of the Highway Patrol attempted to apprehend her, flanking her car with two cars and a car in front. As they slowed her down, she lightly bumped the police car in front of her. She was arrested and charged with second degree property damage.

An associate circuit court judge ordered she be admitted on October 5, 1988, to Southeast Missouri Mental Health Center (SMMHC) for a pretrial psychiatric examination. After the charges were dismissed, Dr. Manis Berry at SMMHC filed a petition on November 22, 1988, for her involuntary detention for ninety-six hours pursuant to section 632.305.2. At the end of the ninety-six hours, appellant was detained for an additional two judicial days. On November 29, 1988, Dr. Adolph Herath, a psychiatrist at the mental health facility, filed a petition pursuant to §§ 632.330.1 and 632.335 for additional detention not to exceed twenty-one days.

In the petition for involuntary detention, Dr. Herath stated that he believed appellant to be mentally ill because "Client has a known case of Bipolar Disorder with prominent mood swings with agitated behaviors (such as the incident precipitating this admission). Her thought processes show a flight of ideas and are occasionally based on delusional beliefs, i.e. reforming the country's education system. She becomes verbally threatening to others." To support his belief that appellant presented a likelihood of serious physical harm, Dr. Herath further stated under oath in the petition:

The alleged criminal conduct prior to SMMHC admission shows that client was experiencing an exacerbation of her mental disorder. Since that time, she continues to exhibit hypomanic behaviors, such as the excessive hand-writing of letters and grievances. She lacks insight into the emotionally unstable condition, and

without treatment, the likelihood that she may again lack the judgment to conform to society without being a threat to others is present.

■ At the detention hearing two days later on December 1, 1988, the trial court heard testimony from appellant's son, her social worker at the hospital, and Dr. Herath, in support of his petition for involuntary detention of appellant. Appellant testified in her own behalf.

Appellant, a fifty-two year old woman, is the mother of a twenty year old daughter and twenty-two year old son. Her sixty-five year old husband suffers from Parkinson's disease. At the time of her hospitalization, appellant was employed as a director of the Grundy County Learning Center. She had over twenty years experience as a teacher.

Dr. Herath diagnosed appellant as having a bipolar affective disorder called manic depressive illness. He characterized it as primarily a disorder where persons have mood swings from irritability and elation to depression. Other symptoms include hyperactivity described as hypergraphia, excessive talking or writing, sleeplessness, and loss of appetite. He had observed these symptoms in her.

By reason of her condition, he expressed his opinion that her condition creates a likelihood of her causing serious physical harm to herself or to others if she were released. He believed Farmington State Hospital to be the least restrictive environment suitable to her particular needs.

He noted that she had thrown books and her medical chart at people, and he was concerned that she might hurt her invalid husband upon her release. He feared she might not be able to control herself and would harm someone. She refused on almost all occasions to take medications of serentil and lithium, prescribed for her mood swings. Appellant admitted she refused to take the medications, because she believed the cancer for which she had surgery over a year ago in February 1987 was responsible for her mood swings.

The doctor added that patients on lithium must be monitored closely and must have blood tests administered to assure that the patient does not become toxic. While he acknowledged that many people with bipolar affective disorder are functional and do not require hospitalization, he added those are persons whose erratic behavior is successfully controlled by medication. The thrust of the doctor's testimony was that, absent any medication, which she refuses to take, she presents a likelihood of serious physical harm to herself and to others. He prefaced his remarks with the observation that appellant disagrees that she suffers from any mental illness.

Appellant testified that she did not need lithium. She agreed that she would seek independent psychiatric help if she were released. Appellant explained her agitated behavior and hostility during her hospitalization as frustration with her involuntary commitment.

The testimony of Dr. Herath, unchallenged by any expert for appellant despite her testimony to the contrary, satisfies this court there was clear and convincing evidence to meet the required standard that, at the time of the hearing, appellant's actions presented a risk of serious harm to herself or to others, thus warranting the twenty-one day commitment.

Appellant appears capable of controlling the disability under which she must function by taking the medication required to alleviate her mood swings. She may be able to accomplish this within the remainder of the twenty-one days of her detention. If additional hospitalization is requested, she is entitled to have a physician appointed to examine her. § 632.345. We find no merit to appellant's first point.

■ Appellant's second point disputes that SMMHC is the least restrictive environment mandated by § 632.350.5. Section 630.005.1(18) defines "least restrictive environment" as:

A reasonably available setting where care, treatment, habilitation or rehabilitation is particularly suited to the level and quality of services necessary to implement a person's individualized treatment, habilitation or rehabilitation plan to en-

able the person to maximize his functioning potential to participate as freely as feasible in normal living activities, giving due consideration to potential harmful effects on the person. For some mentally disordered or mentally retarded persons, the least restrictive environment may be a facility operated by the department; ...

Dr. Herath testified he believed Farmington State Hospital (SMMHC) to be the least restrictive environment for appellant. He also stated that she was given a swimming pass and instead, walked to town. While he mentioned this example to illustrate her extremely poor judgment, the example also supports an inference the least restrictive facility most suited to her particular situation is the mental health facility. Appellant suggests appropriate treatment for her would be as an outpatient in her own home. Appellant ignores the psychiatrist's testimony to the effect that persons who are not locked up must remain on medication to control their disorder and the fact that she does not take the medication when she is on her own. We are satisfied the evidence currently supports the trial court's selection of Southeast Missouri Mental Health Center as the least restrictive environment for appellant. Second point is denied.

We note that, on the day of argument, appellant's counsel filed on her behalf a motion to remand the matter to the trial court for determination of costs including attorney's fees. Inasmuch as the trial court previously found that appellant is unable to pay attorney's fees, we grant the motion and remand the cause for such limited purpose in accordance with § 632.415.2.

In all other respects, the judgment of the trial court is affirmed.