

# In the
# Missouri Court of Appeals
## Western District

**IN THE MATTER OF L.T.,**
         **Appellant.**

**WD86405**
**OPINION FILED:**
**August 15, 2023**

**Appeal from the Circuit Court of Nodaway County, Missouri**
The Honorable Robert Lewis Rice, Judge

Before Special Division:  Cynthia L. Martin, Presiding Judge, Thomas N. Chapman, Judge, and Janet Sutton, Judge

L.T. appeals from a judgment ordering him to be involuntarily detained for a period not to exceed an additional ninety days for inpatient treatment at Mosaic Medical Center in Maryville, Missouri based on findings that he has a mental illness and continues to present a likelihood of serious harm to himself or others.  This court ordered the appeal expedited pursuant to section 632.430.[1]  The briefing schedule was shortened and the case was docketed for oral argument on August 15, 2023.

---

[1]All statutory references are to RSMo 2016 as supplemented through June 28, 2023, unless otherwise noted.  Many subsections in Chapter 632 have been amended, effective August 28, 2023.  The amendments would have had no substantive impact on this case, although they do, in some instances, affect the numbering of some of the statutory subsections referred to in this case.

The Judgment is affirmed.

## Factual and Procedural Background

L.T. is an adult male who resides in Maryville, Nodaway County, Missouri. On June 12, 2023, he was involuntarily detained for treatment as a mental health patient at Mosaic Medical Center - Maryville ("Mosaic") for twenty-one days.[2]

On June 28, 2023, Mosaic filed a petition for additional involuntary detention and treatment ("Petition") in the Circuit Court of Nodaway County pursuant to section 632.340. The Petition sought a determination that L.T. has a mental illness by reason of which he continues to present a likelihood of serious harm to himself or others, and an order that L.T.'s detention for involuntary inpatient treatment be extended for an additional period not to exceed ninety days.

The Petition alleged that L.T. has a long-standing diagnosis of paranoid schizophrenia with poor response to treatment and medication; that L.T's condition has progressed to the point that Mosaic feels the need to pursue guardianship; that L.T.'s current detention had been preceded by frequent and increasing interactions with law enforcement initiated by neighbors and by L.T. himself; and that L.T. is in a frequent psychotic and fearful state with delusional thinking exacerbated by chronic non-compliance with prescribed medication. The Petition also alleged that since his June 12, 2023 admission to the hospital, L.T. has been acting out physically; punching windows; hitting security; screaming expletives at computer screens while slamming his fists on the

---

[2]L.T.'s involuntary detention for twenty-one days was presumably pursuant to the authority of section 632.335.1, and is not at issue in this appeal.

desk; threatening to "kill somebody;" threatening to destroy property; and engaging in verbal and physical intimidation.

The Petition attached a pre-printed verification form that was signed by S.M, APRN,[3] and by L.S., RN.[4] Under oath, S.M. verified that she "has examined [L.T.] and hereby swears and affirms that the statements made in the foregoing application are true to the best of [her] knowledge and belief."

As required by section 632.340.2, a list of proposed witnesses was filed at the same time as the Petition. The witness list identified, among others, Dr. R.W., a psychiatrist. An order setting a hearing on the Petition for July 6, 2023, was also filed with the Petition.

On Thursday, July 6, 2023, the Petition came before the trial court for hearing. At the beginning of the hearing, counsel for L.T. made an oral motion to dismiss the Petition, supplemented by filed suggestions in support. L.T. argued that section 632.330.2(9) required the Petition to be verified by either a psychiatrist who treated L.T., or by a licensed physician and a mental health professional who treated L.T., and that although S.M. signed the verification on the line designated for a psychiatrist's signature, she is not a psychiatrist as defined by section 632.005(22), and is instead an APRN as indicated by the designation she placed next to her signature. L.T. acknowledged that S.M. is a mental health professional as defined by section 632.005(13), but because S.M.'s signature was not accompanied by the signature of a licensed physician as required

---

[3]"APRN" refers to an advanced practice registered nurse.
[4]"RN" refers to a registered nurse.

by section 632.330.2(9), L.T. argued that the Petition was not properly verified.  L.T. argued that defective verification of the Petition deprived the trial court of jurisdiction to enter any further orders in the matter other than an order dismissing the Petition.[5]

The trial court took L.T.'s motion to dismiss under advisement and proceeded to hear evidence in the case.  Mosaic admitted the testimony of Dr. R.W., a psychiatrist who had been employed for eleven months with Mosaic, and who has been a part of L.T.'s treatment team during multiple admissions to the hospital.  During his testimony, Dr. R.W. verified, without objection, that the allegations in the Petition were true and correct as of the day that the Petition was filed.  Mosaic also admitted the testimony of J.W., a Maryville police officer, who has been involved in frequent encounters with L.T. in response to calls from L.T.'s neighbors and L.T. himself.

At the close of the evidence, the trial court denied L.T.'s motion to dismiss, and found that Dr. R.W.'s trial testimony sufficiently supplied the verification required by section 632.330.2(9).  The trial court then found that the evidence established that L.T. has a mental illness and as a result continues to present a likelihood of serious harm to himself or another and needs continued detention and treatment, and that the least restrictive environment for continued detention and treatment can be provided at Mosaic.

---

[5] L.T.'s motion to dismiss also argued that because the Petition was not properly verified, its filing on June 28, 2023 was a nullity, resulting in L.T. being unlawfully detained beyond his initial 21-day involuntary hold (which expired on July 3, 2023).  And, though not addressed in the filed suggestions in support, L.T. orally argued that the Petition should be dismissed because a hearing on the Petition had not been conducted within four judicial days as required by section 632.340.2.  These claims, which were also denied by the trial court, are not further addressed because they have not been raised as issues on appeal.

The trial court ordered L.T. placed in the custody of the Missouri Department of Mental Health to be involuntarily detained for a period not to exceed ninety days. A written judgment was entered accordingly by the trial court on July 6, 2023 ("Judgment"). L.T. filed a notice of appeal on July 11, 2023.

**Standard of Review**

A judgment entered after a court-tried case will be sustained on appeal "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, [or] unless it erroneously declares the law or erroneously applies the law." *In the Matter of Todd*, 767 S.W.2d 589, 590 (Mo. App. E.D. 1988) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The denial of a motion to dismiss can be considered on appeal from a final judgment. *State ex rel. Hawley v. Robinson*, 577 S.W.3d 823, 829 n.5 (Mo. App. E.D. 2019) (citing *In re O.J.B.*, 436 S.W.3d 726, 728-29 (Mo. App. W.D. 2014)). When a party argues that a statute requires dismissal of a petition, the issue raised is a question of law that we review *de novo*. *Forbes v. Allison*, 646 S.W.3d 733, 738 n.5 (Mo. App. S.D. 2022). However, when the denial of a motion to dismiss is based on a discretionary ruling, appellate review is for an abuse of discretion. *Id.* (citing *State ex rel. Ford Motor Co. v. Westbrooke*, 12 S.W.3d 386, 392 (Mo. App. S.D. 2000); *O.J.B.*, 436 S.W.3d at 729).

**Analysis**

L.T. challenges the Judgment in a single point on appeal. L.T. alleges that the trial court was deprived of jurisdiction to consider the Petition and to enter the Judgment because the Petition was not verified by either a psychiatrist who had treated L.T., or by a

5

licensed physician and a mental health professional who had treated L.T., as required by section 632.330.2(9). L.T.'s contention that the trial court was deprived of subject-matter jurisdiction to consider the Petition and to enter Judgment is without merit.

Section 632.340 addresses further detention of a person who is already subject to inpatient detention and treatment for a 21-day period pursuant to section 632.335. Section 632.340.2 provides that a petition seeking further detention "shall comply with the requirements of section 632.330." Section 632.330.2(9) provides, in pertinent part, that a petition for additional inpatient detention or treatment shall "[b]e verified by a psychiatrist or by a licensed physician and a mental health professional who have examined the respondent."[6]

Here, it is uncontested that at the time the Petition was filed, it was not verified by a psychiatrist who had treated L.T. And though the Petition was verified by S.M., a mental health professional as defined by section 632.005(13), it was not also verified by a licensed physician at the time it was filed. The Petition was not in compliance with the verification requirements set forth in section 632.330.2(9) at the time it was filed.

However, the trial court was not deprived of subject-matter jurisdiction to proceed on the Petition by the defective verification. In *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), the Supreme Court delineated the boundaries of subject-matter jurisdiction, and noted that confusion arises when courts and parties do not distinguish between issues involving a court's authority to decide the general matter

---

[6]"Respondent" is defined by section 632.005(25) as "an individual against whom involuntary civil detention proceedings are instituted pursuant to this chapter."

before it and the court's authority to render a particular judgment in a particular case. *Id.* at 254. The Supreme Court explained that subject-matter jurisdiction is constitutionally defined by article V, section 14 of the Missouri Constitution, and is not susceptible of alteration by the courts or by the General Assembly. *Id.* Article V, Section 14 describes subject-matter jurisdiction in plenary terms, and states that "[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal." *Id.* at 253. While a circuit court's authority to render a "particular judgment" in a "particular" case may be subject to limitations on its authority imposed by statute or otherwise, these limitations do not call into question the court's subject-matter jurisdiction. *Id.* at 254. "Elevating statutory restrictions to matters of 'jurisdictional competence' erodes the constitutional boundary established by article V of the Missouri Constitution, as well as the separation of powers doctrine, and robs the concept of subject matter jurisdiction of the clarity that the constitution provides." *Id.*

Here, the trial court plainly had subject-matter jurisdiction to entertain the Petition pursuant to article V, section 14 of the Missouri Constitution. Though the Petition's defective verification at the time it was filed violated a statutory requirement, and thus implicated whether the trial court committed error by denying L.T.'s motion to dismiss, the defective verification did not implicate the trial court's subject-matter jurisdiction to entertain the Petition or to enter the Judgment. *See Robertson v. Rosner*, 641 S.W.3d 436, 442 (Mo. App. W.D. 2022) (observing that "[a]fter *Webb*, a claim that a petition is defective . . . cannot be treated as a 'jurisdictional' issue").

7

Because L.T.'s motion to dismiss the Petition argued only that defective verification of the Petition deprived the trial court of jurisdiction to take any further action on the Petition beyond its dismissal, the trial court did not commit legal error when it denied the motion to dismiss. L.T.'s reliance on *In re Marriage of Dunn*, 650 S.W.2d 638, 639 (Mo. App. E.D. 1983), for the contrary proposition that defective verification of a petition "will not suffice to confer jurisdiction" is misplaced, as that decision predates *Webb*. Similarly, because L.T.'s point on appeal argues only that the trial court did not have jurisdiction to enter Judgment on the Petition, the point is plainly without merit.

We recognize that the essence of L.T.'s claim on appeal is that the trial court should have granted L.T.'s motion to dismiss because section 632.330.2(9) required the Petition to be verified in a manner that it was not. However, a claim of non-jurisdictional trial court error was not asserted in L.T.'s motion to dismiss. "We will not 'convict a trial court of error on an issue that was not put before the trial court to decide.'" *Loutzenhiser v. Best*, 565 S.W.3d 723, 730 (Mo. App. W.D. 2018) (quoting *Barner v. Mo. Gaming Comm'n*, 48 S.W.3d 46, 50 (Mo. App. W.D. 2001)). Similarly, L.T.'s point on appeal does not argue that the trial court committed non-jurisdictional error when it denied the motion to dismiss in light of the Petition's failure to comply with section 632.330.2(9) at the time it was filed. And even if the point on appeal could be generously interpreted to raise this argument, it is generally the case that "[a]rguments not raised before the trial court . . . are not preserved for review on appeal." *Loutzenhiser*, 565 S.W.3d at 730.

There are substantial liberty interests implicated by this case, however. *See Grado v. State*, 559 S.W.3d 888, 895 (Mo. banc 2018) (observing that civil commitment

8

proceedings impinge on fundamental liberty interests that are protected by due process).

We therefore exercise our discretion to address the essence of L.T.'s point on appeal, even though it is incorrectly framed as an attack on the trial court's subject-matter jurisdiction.

As noted, section 632.340.2 provides that a petition seeking further detention "**shall** comply with the requirements of section 632.330." (Emphasis added.) And section 632.330.2(9) provides, in pertinent part, that a petition for additional inpatient detention or treatment "**shall** . . . [b]e verified by a psychiatrist or by a licensed physician and a mental health professional who have examined the respondent." (Emphasis added.)

"[W]hen the legislature uses the word 'shall' in a statute, the issue 'is not whether "shall" means "shall" but what sanction (if any) the legislature intended to apply' when the required act is not done." *Countryclub Homes, LLC v. Mo. Dep't of Nat. Res.*, 591 S.W.3d 882, 890 (Mo. App. W.D. 2019) (quoting *Frye v. Levy*, 440 S.W.3d 405, 408 (Mo. banc 2014)). "If the legislature has imposed a sanction or otherwise indicated a consequence for noncompliance, then the statute is a mandatory statute, and courts will enforce the intended sanction or consequence for noncompliance." *Id.* at 890-91 (citing *Frye*, 440 S.W.3d at 408). "If, however, the legislature has not approved a sanction or has not otherwise indicated a consequence for noncompliance, then the statute is a directory statute." *Id.* at 891 (citing *Frye*, 440 S.W.3d at 408).

Here, though section 632.340.2 provides that a petition filed thereunder "shall" comply with the requirements in section 632.330, and though section 632.330.2(9) provides that a petition seeking an order of involuntary civil detention "shall" be verified

9

by a psychiatrist or by a licensed physician and a mental health professional who have examined the respondent, neither statute describes a sanction or consequence for noncompliance. Certainly, neither statute mandates that a petition that is not verified in the manner contemplated by section 632.330.2(9) must be dismissed by a trial court.[7] We therefore conclude that the verification requirement described in section 632.330.2(9) is merely directory, not mandatory.

Thus, when a trial court is faced with a motion to dismiss a section 632.340 petition that has not been verified as required by section 632.330.2(9), the trial court is not required to dismiss the petition as a matter of law. Instead, a trial court's ruling on a motion to dismiss a petition that is not verified as required by section 632.330.2(9) is

---

[7]This differentiates the verification requirement set forth in section 632.330.2(9) from the medical affidavit requirement described in section 538.225. The purpose of section 538.225 is to ensure that a medical negligence petition, which will ultimately depend for its proof on expert witness testimony, is accompanied by an affidavit from a requisite expert medical witness supporting the claims of medical negligence set forth in the petition. Though this is arguably analogous to the purpose of the verification requirement associated with petitions to involuntarily detain individuals suffering from a mental illness, unlike section 632.330.2(9), which describes no sanction for noncompliance, section 538.225.6 expressly requires a trial court to dismiss a medical negligence petition filed without a compliant affidavit, making the affidavit requirement mandatory and not merely directory. "The statutory language [in section 538.225], both in terms of directing a plaintiff to file an affidavit and directing the court to dismiss the action if an affidavit is not filed, demonstrates that the legislature intended the requirement that a plaintiff file an affidavit with the court be mandatory." *Mayes v. St. Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 271-72 (Mo. banc 2014). For that reason, a defective section 538.225 affidavit cannot be thereafter remediated as to avoid dismissal of the petition the affidavit is required to accompany. *Cook v. Parkland Health Ctr.*, No. ED111044, 2023 WL 3958784, at *7 Mo. App. E.D. June 13, 2023) (holding that permitting addition of signature to a section 538.225 affidavit after the affidavit was filed with petition in medical negligence case "would directly conflict with the legislature's clearly stated intent").

reviewed for an abuse of discretion. *Forbes*, 646 S.W.3d at 738 n.5. For the reasons hereinafter explained, we conclude that the trial court did not abuse its discretion in denying the motion to dismiss under the facts and circumstances in this case.

In general, the purpose of a verification requirement "is to secure good faith in the averments of a party." *Federated Mortg. & Invest. Co. v. Jones*, 798 S.W.2d 719, 721 (Mo. banc 1990) (citing *Drury Displays v. Bd. of Adjustment*, 760 S.W.2d 112, 114 (Mo. banc 1988)). "As a general rule the verification requirement is not so strict as to make an unverified petition 'unsalvageable.'" *Id.* (quoting *Drury Displays*, 760 S.W.2d at 114). "The reason for this must be that when a pleading otherwise states a cause of action to support a judgment, the verification does not constitute a part of the pleading itself but, rather, goes to the form of the pleading." *Id.* Thus, it is generally accepted that a trial court can act within its discretion to permit a defective or omitted verification to be remediated so long as the pending matter remains under the trial court's control. *See, e.g.*, *Drury Displays*, 760 S.W.2d at 114-15 (trial court would have been within its discretion to permit amendment to correct pleading that was not properly verified, which would have related back to the originally filed petition, requiring reversal of dismissal of unverified petition).

Section 632.340.2 required a hearing on the Petition to be conducted within four judicial days[8] of its filing. L.T.'s oral motion to dismiss the Petition was not raised until

---

[8]Section 632.005(7) defines "judicial day" as "any Monday, Tuesday, Wednesday, Thursday, or Friday when the court is open for business, but excluding Saturdays, Sundays and legal holidays." Four judicial days after the filing of the Petition would thus have been no earlier than Wednesday, July 5, 2023, as July 1, 2023, and July 2, 2023,

11

July 6, 2023, at the beginning of the hearing on the Petition.  As a result, there was virtually no opportunity to remediate the defective verification through traditional pleading or motion practice (including by way of a motion seeking leave to file an amended Petition) while the matter remained under the trial court's control.

However, Dr. R.W., L.T.'s treating psychiatrist who was identified on the list of witnesses filed with the Petition, was the first witness to testify at the expedited hearing on the Petition.  The trial court inquired of Dr. R.W., without objection, as follows:

> Q:      Dr. [R.W.], have you seen the petition for involuntary detention and treatment, the one that's asking the Court to consider a 90-day involuntary detention?
>
> A:      Yes, I have.  I actually have it in front of me now.
>
> Q:      Looking at the contents of that petition, do you verify that the information therein contained is true and accurate?
>
> A:      All of the information is correct.  I have read through it.
>
> Q:      Can you explain to the Court, then, the purpose of [S.M.] signing the verification form as opposed to you, sir?
>
> A:      Yeah.  So it was signed on a day when I was not on service, and if I had been on service that day, I would have signed it exactly as it's written, without any changes.  However, since I wasn't on service that day and she was the provider providing care for him at that time, she did sign it.

were a Saturday and a Sunday, and as Tuesday, July 4, 2023, was a legal holiday.  The hearing on the Petition was conducted on Thursday, July 6, 2023, beginning at 1:15 p.m., arguably five judicial days after the Petition was filed.  However, we take judicial notice that the Chief Justice of the Missouri Supreme Court authorized Presiding Judges to close their courts on Monday, July 3, 2023, at noon.  The record does not indicate whether the Circuit Court of Nodaway County was closed at noon on July 3, 2023.  In any event, L.T. has abandoned the claim asserted in his motion to dismiss about whether a hearing was conducted on the Petition in four judicial days and has not suggested or demonstrated any prejudice by what is at most a one-day delay.

12

Q:    And Dr. [R.W.]. do you therefore authorize [S.M.] to sign that in your place as if it was your own signature?

A:    Absolutely, without hesitation.

At the conclusion of the evidence, the trial court found that "[t]he information in the [P]etition was in fact verified by a psychiatrist, specifically Dr. [R.W.], who claimed he would have signed [the Petition] had he been on duty at the time [it was filed]." The trial court further noted that section 632.330.2(9) states that a petition shall "[b]e verified by a psychiatrist or by a licensed physician and a mental health professional who have examined the respondent," but does not express a requirement that the verification can only be provided at the time the petition is filed. Because Dr. R.W. verified the information in the Petition under oath in his testimony, the trial court denied the motion to dismiss.

This was not an abuse of discretion. The trial court's reliance on the testimony of Dr. R.W. to remediate the defective verification on the Petition is tantamount to permitting an amendment of the Petition that would have related back to the original filing of the Petition. "[T]he timing of the verification is unimportant as long as the petition is verified prior to the entry of the final judgment . . . ." *Drury Displays*, 760 S.W.2d at 114 (quoting *Standard of Beaverdale, Inc. v. Hemphill*, 746 S.W.2d 662, 664 (Mo. App. E.D. 1988)). "[T]he verification of a complaint, as well as the complaint itself, speaks as of the time the action was commenced by filing the complaint. It is sufficient if it was then true.'" *Id*. (quoting 71 C.J.S. *Pleading* section 358). Dr. R.W.'s hearing

testimony fulfilled the purpose of a verification requirement by confirming that the assertions in the Petition were true as of time the Petition was filed.

Moreover, L.T. has not demonstrated that he was prejudiced by the trial court's reliance on Dr. R.W.'s testimony to remediate the defective verification on the Petition. As with all such requirements, the purpose of the verification requirement in section 632.330.2(9) is to "assure the truth" of assertions in a petition that seek to involuntary detain a person. *Drury Displays*, 760 S.W.2d at 114 (quoting *Am. Indus. Res., Inc. v. T.S.E. Supply Co.*, 708 S.W.2d 806, 808 (Mo. App. E.D. 1986)). This interest requires a balance, however, between society's "interest in providing treatment to the mentally ill while protecting its citizens from harmful conduct." *In re Kevin S.*, 886 N.E.2d 508, 513 (Ill. App. 2008). Although the failure to strictly comply with statutory verification requirements yields technical error at the time an involuntary civil commitment petition is filed, in the absence of demonstrated prejudice, dismissal of the petition is not required if the defective verification is sufficiently remediated while the matter remains under the trial court's control. *See Thomas v. Thomas*, 910 S.W.2d 825, 827-28 (Mo. App. E.D. 1995) (holding that requirement of verified pleading is not so strict as to render the pleading unsalvageable, and verification may be supplied by amendment that will relate back to the time the petition was filed in the absence of demonstrated prejudice); *Life Med. Sys., Inc. v. Franklin Cnty. Comm'n*, 810 S.W.2d 554, 558-59 (Mo. App. E.D. 1991) (holding that although unverified petition did not comply with section 64.870.2, verification could be later supplied by amendment as respondent demonstrated no prejudice by the lack of verification); *Alverez v. State*, 840 So. 2d 322, 325 (Fla. App.

14

2003) (holding that although pleading alleging detainee was a sexually violent predator was not verified as required at the time it was filed, the defect is no more than a formal pleading defect the state should have been permitted to correct, particularly where no actual prejudice to detainee has been demonstrated), *quashed on other grounds State v. Alverez*, 940 So. 2d 1111 (Fla. 2006).

Here, Dr. R.W. testified under oath that the allegations in the Petition were true and accurate as of the date the Petition was filed. When the Petition was filed, it was not unverified. And though the verification was statutorily deficient, it was nonetheless provided by S.M., a qualified mental health professional, with no suggestion that S.M.'s verification was untruthful or not based on personal knowledge. S.M.'s signature on the verification form instead of Dr. R.W.'s was explained by Dr. R.W.'s plausible, non-culpable, testimony that he was not at the facility on the day the time-sensitive petition needed to be verified and filed.[9] Finally, the defective verification was remediated through the trial testimony of L.T.'s treating psychiatrist a mere eight calendar days after the Petition was filed. These circumstances combine to assure that the underlying purpose of the verification requirement in section 632.330.2(9) was achieved, as they suggest "good faith in the averments of a party." *Federated Mortg. & Invest. Co.*, 798 S.W.2d at 721. In light of these circumstances, no actual prejudice to L.T. has been

---

[9]Section 632.340.2 requires a petition that seeks additional detention beyond the twenty-one-day inpatient detention period authorized by section 632.335 to be filed within seventeen days of the court hearing described in section 632.335.

15

demonstrated, and the trial court did not abuse its discretion in denying the motion to dismiss.

The trial court had subject-matter jurisdiction to entertain the Petition and to enter the Judgment. The trial court did not commit legal error when it denied L.T.'s motion to dismiss as the verification requirements in section 632.330.2(9) are directory and not mandatory. The trial court did not abuse its discretion when it denied L.T.'s motion to dismiss because the Petition's defective verification was remediated by trial testimony from L.T.'s treating psychiatrist that confirmed the truth of the allegations in the Petition as of the time it was filed, and because L.T. demonstrated no prejudice resulted from permitting the defective verification to be remediated in this manner.

Point One is denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur