J.C.W. and T.D.W., Minors, by their next friend, Kelly K. WEBB, Appellant,

v.

**Jason L. WYCISKALLA, Respondent.**

No. SC 89404.

Supreme Court of Missouri, En Banc.

Jan. 27, 2009.

Jonathan D. Marks, The Marks Law Firm, LLC, Creve Coeur, for Appellant.

Lawrence G. Gillespie, Clayton, Julie Huffman McCarver, Kramer & Hand, LLC, Hillsboro, Joan Bryan, DeSoto, for Respondent.

### Introduction: Concepts of Jurisdiction

MICHAEL A. WOLFF, Judge.

In deciding this case, the task at hand is to bring down to earth and clarify the meaning of the magical word "jurisdiction." The word has magic because it can make judgments disappear, as in: "The judgment is a nullity because the court lacked jurisdiction." The word has magic because it makes judges fearful of entering the Land of No Jurisdiction. A lawyer, accordingly, employs the magic word in hopes of curbing the judicial beast from entering the Land of No Jurisdiction, where the defense of the case might be devoured on its merits. In other cases, perhaps, judges likewise may use the magical word to display the admirable trait of judicial self-restraint in order to avoid deciding the merits. (This admirable trait can be exercised, one hastens to add, without getting all jurisdictional about it.) A

word with such magic would seem, of course, to be irresistible to those who would seek legislation to block the courthouse door to litigants of unpopular character and claims of disfavored origin.

To call a concept "jurisdictional" is to elevate its importance. The problem with a word with such magic is, sadly, that it will be over used, as it is in cases such as the present case.

■ The statute at the center of this case, section 452.455.4[1], is reasonably straightforward. It says that a parent who is more than $10,000 in arrears in payment of child support may not petition to modify a judgment of custody or visitation without posting a bond in the amount of the arrearage, or the legal fees of the custodial parent, whichever is greater, *before filing the petition.*[2] *Id.* An earlier decision of the court of appeals characterizes the statute's prohibition as a matter of "personal" jurisdiction. *Miller v. Miller,* 210 S.W.3d 439, 444 (Mo.App.2007).[3] In contrast, in this case, a different division of

the court of appeals characterized the issue as a matter of "subject matter jurisdiction" or "jurisdictional competence." *J.C.W. ex rel. Webb v. Wyciskalla,* 2008 WL 1957647, *2 (Mo.App.2008). As a brief review of "jurisdiction" will show, the correct characterization is: none of the above.

As discussed in *In re Marriage of Hendrix,* 183 S.W.3d 582 (Mo. banc 2006), Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction. These two kinds of jurisdiction—and there are only two for the circuit courts—are based upon constitutional principles. Personal jurisdiction is, for the most part, a matter of federal constitutional law.[4] Subject matter jurisdiction is governed by article V of the Missouri Constitution.

■ Personal jurisdiction often is referred to by its Latin name "*in personam*" jurisdiction, a handy way of implying that the concept has ancient roots and, thus, longstanding legitimacy. In modern

---

1. All statutory references are to RSMo 2000.

2. Section 452.455.4 provides, "When a person filing a petition for modification of a child custody decree owes past due child support to a custodial parent in an amount in excess of ten thousand dollars, such person shall post a bond in the amount of past due child support owed as ascertained by the division of child support enforcement or reasonable legal fees of the custodial parent, whichever is greater, before the filing of the petition. The court shall hold the bond in escrow until the modification proceedings pursuant to this section have been concluded wherein such bond shall be transmitted to the division of child support enforcement for disbursement to the custodial parent."

3. In *Miller v. Miller,* 210 S.W.3d 439 (Mo. App.2007), the court of appeals held that "absent the filing of the requisite bond, a trial court would not have any authority to proceed on a qualifying motion under Section 452.455.4, or in other words, it would lack

personal jurisdiction over the non-movant to proceed on the motion." *Id.* at 444.

4. Historically courts also have recognized *in rem* and *quasi in rem* as distinct categories of jurisdiction. Since the United States Supreme Court's decision in *Shaffer v. Heitner,* the recognition of those forms of jurisdiction as separate concepts no longer is necessary. 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The same constitutional test of "fair play and substantial justice" as applies to personal jurisdiction applies to assertions of jurisdiction *in rem,* the Court said, because the judicial jurisdiction over a thing (*in rem* ) "is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing. The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum contacts standard elucidated in *International Shoe."* 433 U.S. at 207, 97 S.Ct. 2569 (citations and internal quotes omitted.).

terms, personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests. *State v. Fassero*, 256 S.W.3d 109, 117 (Mo. banc 2008). Since *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), the power of a state's courts over persons within and without the territory of the state has been a matter of due process of law under the Fourteenth Amendment to the United States Constitution. *Id.* at 734. Even before *Pennoyer*, the power of the state courts to exercise jurisdiction over persons within the state and the interests of persons in property within the state was unquestioned. *Id.* at 723. The Due Process Clause limits the power of the state over persons outside the state; the needs of interstate and international commerce have expanded the notions of what extraterritorial power a state court may exercise. *See International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. To facilitate the economic advantages of having those with business in a state be answerable in the state's courts, Missouri and its sister states have enacted statutes and rules that explicitly, or by judicial interpretation, expand the state courts' jurisdictional reach to the maximum extent permitted by the federal constitution.[5] In modern times, when a court says that it lacks personal jurisdiction, it means simply that the constitutional principle of due process bars it from affecting the rights and interests of a particular person, whether such a "person" be an individual or an entity such as a corporation.

■ Subject matter jurisdiction, in contrast to personal jurisdiction, is not a matter of a state court's power over a person, but the court's authority to render a judgment in a particular category of case. In the federal courts, unlike Missouri, subject matter jurisdiction is set forth in statutes passed within the authority granted to Congress by article III of the United States Constitution. Thus, pursuant to this constitutional authority, Congress has the power to increase or decrease the kinds and categories of cases heard in the federal courts.[6]

■ In contrast to the federal system, the subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution. Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that "[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and

---

**5.** This Court, for example, in *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325 (Mo. banc 1984), interpreted the state's long-arm statute as intending to exercise jurisdiction to the maximum permitted under the Due Process Clause. *Id.* at 327 citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970), and *State ex rel. Newport v. Wiesman*, 627 S.W.2d 874 (Mo. banc 1982). The General Assembly could change the result in that case and restrict the courts' power over foreign defendants, if it wished, by amending or replacing the current statute. But in today's national,

global and virtual economy, such a change truly would be breathtaking.

**6.** Federal courts are referred to as courts of limited jurisdiction because they are courts of a sovereign whose authority is limited to those subjects the United States Constitution assigns to the national government. States, by contrast, are sovereigns of general powers—powers that are limited only by the authority granted exclusively to the federal government or reserved by the state or federal constitution to the people themselves. U.S. Constitution, Amendment X.

places within the circuit as determined by the circuit court." (emphasis added.) [7]

In evaluating the jurisdiction of circuit courts, there are cases that, in *dicta*, purport to recognize a third concept, "jurisdictional competence," which often is confused with subject matter jurisdiction. As *Hendrix* noted, these cases generally concern situations in which "there is no question as to the court's authority to decide the general issue before it, but there is a question whether the issue or parties affected by the court's judgment are properly before it for resolution at that time," 183 S.W.3d at 588, or where the court "has proceeded 'beyond the allegations of the pleadings and the prayer for relief.'" *Id.* (citation omitted). *Hendrix* noted that these cases "do not question the court's subject matter or personal jurisdiction and really go to the court's authority to render a particular judgment in a particular case," *Id.* at 588 (citing *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 21 (Mo. banc 2003)). The Court, however, did not take the further step of expressly holding that this third category does not deal with jurisdiction in the true sense. This has resulted in some continued confusion in the courts as to whether a court's errors in following a statute or in going beyond the pleadings are jurisdictional in nature.

▪ Today the Court takes that further step. Because the authority of a court to render judgment in a particular case is, in actuality, the definition of subject matter jurisdiction, there is no constitutional basis for this third jurisdictional concept for statutes that would bar litigants from relief. Elevating statutory restrictions to matters of "jurisdictional competence" erodes the constitutional boundary established by article V of the Missouri Constitution, as well as the separation of powers doctrine, and robs the concept of subject matter jurisdiction of the clarity that the constitution provides. If "jurisdictional competence" is recognized as a distinct concept under which a statute can restrict subject matter jurisdiction, the term creates a temptation for litigants to label every statutory restriction on claims for relief as a matter of jurisdictional competence. Accordingly, having fully considered the potential ill effects of recognizing a separate jurisdictional basis called jurisdictional competence, the courts of this state should confine their discussions of circuit court jurisdiction to constitutionally recognized doctrines of personal and subject matter jurisdiction; there is no third category of jurisdiction called "jurisdictional competence."

## The Court has Jurisdiction

Applying this principle to the present case makes simple the task of determining jurisdiction: The present case is a civil case. Therefore, the circuit court has subject matter jurisdiction and, thus, has the authority to hear this dispute. The circuit court also has the power to render a judgment that binds the parties, who both are residents of Missouri. Therefore, it has personal jurisdiction.

## Does the Statute on Arrearages Apply?

From the foregoing authorities, it is clear that neither the courts nor the legis-

7. By contrast, there are subject-matter limits that can be placed by statute on associate circuit judges, as article V, section 17 of the Missouri Constitution specifies: "Associate circuit judges may hear and determine all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges and may be assigned such additional cases or classes of cases as may be provided by law. In probate matters the associate circuit judge shall have general equitable jurisdiction."

lature owns the concept of subject matter jurisdiction. It is a function of the Missouri Constitution, which was enacted by and therefore is owned by the people.

What, then, is to be made of a statute that requires a noncustodial parent who owes more than $10,000 in child support arrears to post a bond in the amount of the arrears before filing a petition to modify a custody or visitation judgment?

■ When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant. Such statutory limits are, of course, subject to the right recognized by article I, section 14 to have a remedy for a legal wrong.[8] *See Kilmer v. Mun,* 17 S.W.3d 545, 550 (Mo. banc 2000) (holding that the "dram shop" statute violated the open courts provision of the state constitution). Statutory restrictions on judicial remedies also may be subject to the constitutional principle of separation of powers. And a statute that conditions access to courts on the payment of a filing fee or other costs may violate the 14th Amendment to the United States Constitution. *See Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

In this case, Father, haled into court on his former wife's request for permission to move with the children to California, challenges the constitutional validity of section 452.455.4, which might be read to bar his request for judicial relief. As a review of the facts and procedural history will indicate, no such constitutional challenge is currently ripe in this case.

### Facts and Procedural History

Kelly Webb ("Mother") and Jason Wyciskalla ("Father") are the natural parents of J.C.W. and T.D.W., twins born in June 2002. In May 2003, Mother filed a paternity action against Father in the circuit court of Jefferson County. Father did not appear at the hearing, and the court awarded sole legal and physical custody of J.C.W. and T.D.W. to Mother, with Father receiving a schedule of visitation. Regarding child support, the court ordered Father to pay $1,092 per month and to pay retroactive support to Mother in the amount of $10,928.75. Subsequent to the trial court's entry of judgment, Father and Mother agreed to modify the original judgment by gradually increasing Father's temporary custody and visitation. The trial court thereafter entered a consent judgment containing the agreed-upon modifications.

In July 2005, Mother provided notice to Father of her intention to relocate to California.[9] In response, Father filed a motion

---

8. Article I, section 14 provides "[t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

9. Section 452.377.2 sets forth the requirements for relocation notice in child custody cases. It provides that "[n]otice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation." Under section 452.377.7, "[t]he residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice."

to prevent relocation in the circuit court. In September 2005, Mother provided notice to Father that, in the event that the court denied her request to relocate to California, she intended to relocate to another residence within Missouri. Father responded by filing a motion to prevent relocation. In April 2006, Mother sent a fourth relocation notice to Father in which she reiterated her desire to relocate to California. In response, Father once again filed a motion to prevent relocation. In addition to his motions to prevent relocation, Father filed a motion to modify the consent judgment. In his motion to modify, Father argued that Mother's attempts to relocate were part of a continuing effort to isolate the children from Father. Father alleged in the motion that Mother had denied him telephone contact and visitation and that Mother had abused and neglected the children. Father also claimed an inability to pay the $1,092 a month or the $10,928.75 specified in the consent judgment. Based on these allegations, Father asked the court to modify the consent order and grant him sole legal and joint physical custody and make-up visitation. He also requested that the court reduce the amount of child support specified in the order.

The trial court held a hearing on Father's motion to modify. At the hearing, the court heard the testimony of Father and Mother, as well as the testimony of two therapists and the children's *guardian ad litem*. After considering the evidence, the court found that Father's claims amounted to "a sufficient change in circumstances warranting modification and that such a modification which denies mother's request to relocate and vests joint legal and physical custody in both parents is in the best interest of both children." Regarding the amount of child support, the court reduced Father's monthly child support obligation to $0, ordering that "neither party shall pay child support to the other." The trial court also determined that Father had overpaid child support in the years following entry of the consent judgment and that, as a result, he owed nothing in child support arrearage. After decision by the court of appeals, this Court granted transfer and has jurisdiction. Mo. Const. art. V, sec. 10.

**Does section 452.455.4 bar Father from filing a motion to modify?**

Section 452.455.4 provides that a parent who owes more than $10,000 in child support arrearage must post bond for the amount of child support due, or the custodial parents' attorney fees, before filing a motion for modification of child custody or support.[10] Mother asserts that because Father owed more than $10,000 in arrearages at the time of filing, he was prohibited by section 452.455.4 from filing a petition for modification of child custody or support without posting a bond. She argues that the trial court, therefore, erred in granting relief to Father.

■ If, as Mother claims, Father did in fact owe more than $10,000 in child support arrearages, the plain language of section 452.455.4 would prohibit him from filing a motion to modify.[11] The statute says

10. Although Mother requested attorney's fees in her responses to Father's motions to prevent relocation, the amount of attorney's fees she incurred as a result of Father's motion to modify is unclear from the record.

11. It is important to note that section 452.455.4 prohibits a party owing more than $10,000 in child support arrearage from initiating a motion to modify. *Id.* The statute does not prevent such a party from responding to such a motion. As such, Father's ability to respond to a motion filed by Mother is unaffected by the amount of child support arrearage he owes.

that the bond shall be in the amount of past child support "owed as ascertained by the division of child support enforcement or reasonable legal fees of the custodial parent, whichever is greater, before the filing of the petition." *Id.* The statute, however, provides no opportunity for the noncustodial parent to be heard as to the amount owed, and, thus, as a matter of simple due process, there must be a hearing to determine whether the amount of arrearages is more than $10,000. Article I, section 14 of the Missouri Constitution also necessitates such a hearing. Article I, section 14 provides that the "courts of justice shall be open to all." This means that the key to the courthouse door cannot be in the hands of an enforcement agency. *Kilmer v. Mun,* 17 S.W.3d 545. Father cannot be barred from judicial relief by a factual determination made by the division of child support in the absence of an opportunity for judicial review of the issue. In this case, there was an *initial* judicial determination of child support by the trial court in the original consent judgment. To determine whether a parent is barred from requesting modification of this judgment under section 452.455.4, however, the trial court considering the modification must be able to review the issue of arrears.

Even though the statute purports to leave to the division of child support enforcement the determination of the amount of support owing, the statute also says "or reasonable legal fees of the custodial par-

ent, whichever is greater." Section 452.455.4. The language of this provision belies the fact that the division of child support has no way of ascertaining the reasonable legal fees of the custodial parent in this situation. Moreover, the division has no authority to make such a determination. Due process requires that the amount of child support owing, or the reasonable legal fees of the custodial parent, whichever is greater, are facts that must be subject to judicial review. In other words, it is the trial court that has the authority ultimately to determine the amount of child support arrearages a party owes in order to determine whether that party is barred from filing a petition to modify under section 452.455.4 without posting a bond. If the amount of arrears is greater than $10,000, the trial court then must determine what the custodial parent's reasonable legal fees would be in order to determine the amount of the bond required by the statute.

 In this case, neither Father nor Mother requested a recalculation of arrearages in their pleadings.[12] The result, apparently, is that neither party presented evidence at the modification hearing regarding the amount of arrearages owed by Father. There is some indication in the record that Father's time with the children, as well as changes in the incomes of both parents, may have justified a reduction in the amount of child support due. Without specific evidence regarding the

12. Although neither party requested a recalculation of arrearages, Father did request a modification of his monthly child support obligation. Specifically, Father claimed that the amount of child support specified in the consent judgment was no longer appropriate because Father's visitation with the children had increased significantly. Father also argued that the child support amount should be reduced because both his and Mother's incomes had changed since entry of the consent judgment and that the consent judgment's calculation of child support, which was based on their prior incomes, had become unfair. Based on these claims, the trial court found that Father had "overpaid child support but that he had a large arrearage due since the original Judgment and throughout these proceedings. Therefore, the recalculated arrearage amount shall be $0.00, effective on the date of this Judgment."

arrearage calculation, however, the trial court's conclusion that Father owed nothing in child support arrearage is unsupported by the evidence. Without sufficient evidence to determine the amount of arrearages owed by Father, this Court cannot determine whether Father's motion to modify would be barred by section 452.455.4 in the absence of a bond.

Because it is unclear from the record whether section 452.455.4 applies, this Court cannot consider Father's challenge to the constitutional validity of the statute. The challenge to the statute, at this point, is not ripe.

On this record, the Court will vacate the judgment of the circuit court and remand this case for a new hearing. If the trial court determines, after hearing, that there is $10,000 or less in child support arrearage, the statute is no impediment to Father's request for relief. If, on the other hand, the arrearage is more than $10,000, the circuit court will be faced with the constitutional question Father attempted to assert here.

### Conclusion

The judgment of the circuit court is vacated, and the case is remanded. On remand, the trial court will be able to determine whether the challenged statute applies; and if so, whether it is constitutional; and what relief, if any, should be provided to the parties on their respective requests for judicial relief.

All concur.