

# Missouri Court of Appeals

## Southern District

### In Division

| | |
|---|---|
| MIKE SEITZ, ) | |
| ) | |
| Appellant, ) | No. SD38421 |
| ) | |
| v. ) | **Filed:** January 22, 2025 |
| ) | |
| ADVANCED WELDING & ) | |
| MANUFACTURING, INC., D/B/A ) | |
| ADVANCED WELDING & ) | |
| ORNAMENTAL IRON, ) | |
| ) | |
| Respondent. ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Joshua B. Christensen, Judge

**AFFIRMED**

### Introduction

This appeal arises from a dispute between the parties regarding a contract for the sale, construction, and installation of a gate at a farm owned by Appellant Mike Seitz. Seitz sued Respondent Advanced Welding & Manufacturing, Inc., alleging breach of contract and a violation of the Missouri Merchandising Practices Act ("MMPA"),[1]

---

[1] The MMPA is a consumer-protection statute that requires the plaintiff to prove that he or she: (1) purchased merchandise from defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by section 407.020.

§ 407.025 *et seq.* Advanced Welding counterclaimed for the remaining balance due under the contract for the gate and sought attorney's fees and interest under the Private Prompt Pay Act, § 431.180, a statute that authorizes a prevailing party to collect attorney's fees and interest when payments are not made in accordance with a contract for "private design and construction work."

Following a bench trial, the trial court entered judgment in favor of Advanced Welding on all claims. In denying Seitz's MMPA claim, the trial court found Seitz failed to prove two elements of his claim because: (1) Seitz purchased the gate "as a sophisticated business owner, not as a mere consumer" and (2) there "were no actionable 'false, fraudulent or deceptive merchandising practices' here by [Advanced Welding]." Finally, the trial court found Advanced Welding's attorney's fees in the amount of $27,687.58 were "reasonable and necessary to the collection of unpaid amounts owed" and, in addition, awarded "1.5% in monthly interest on the principal sum of $10,398.00, under Section 431.180.2."

Seitz appeals from that judgment in four points. In point 1, Seitz argues the trial court erred in awarding attorney's fees and interest to Advanced Welding under section 431.180, because the Uniform Commercial Code ("UCC") applied and provided the exclusive remedy in this case. In point 2, Seitz argues the trial court erred in awarding attorney's fees under section 431.180 because it required the court to segregate and allocate between fees that are recoverable and fees that are not recoverable. In points 3 and 4, Seitz argues the trial court erred by entering judgment against Seitz on his MMPA

---

§ 407.025. All statutory references are to RSMo (2016). All rule references are to Missouri Court Rules (2024).

claim because the gate was purchased primarily for personal, family, or household purposes (point 3), and Advanced Welding did not tell Seitz about the material changes to the specifications of the gate (point 4). Finding no merit in Seitz's points, we affirm.

**Background and Procedural History**

Seitz is a businessman whose enterprises include cattle, real-estate development, and property management. In 2020, Seitz contacted Advanced Welding about building and installing a gate on his cattle farm located in Republic, Missouri. Initially, the parties met onsite, and agreed the gate would be essentially identical to a gate Advanced Welding had designed and constructed for Seitz in 2017. Advanced Welding gave Seitz a quote that showed the total price for the gate was $20,798 and the first line stated "2 - 12ft long gate panels same design as last but with different logo."[2] The remaining items on the list were nearly verbatim to the quote for the 2017 gate. Seitz authorized Advanced Welding to proceed and paid a deposit of $10,400.

About a month later, Advanced Welding returned to the site and discovered Seitz had prematurely poured a driveway.[3] Advanced Welding informed Seitz the design for the 2020 gate would have to be modified to conform to the prematurely poured driveway.

Advanced Welding sent Seitz a drawing of the proposed modifications, which Seitz approved. The new design required additional labor to craft the 2020 gate. Each panel was built separately and to different dimensions and many components required

---

2 At some later point, Seitz informed Advanced Welding he had changed his mind about the logo and wanted "Triple S" the logo he used for his businesses, on the 2020 gate.

[3] The driveway lacked proper grade-work to level the surface and would not allow the electrical conduit and induction loops to be positioned before concrete was poured. Seitz was present and acknowledged having gone ahead with the driveway. Tim Johnson, owner of Advanced Welding, told Seitz the grade was not set right, that Seitz had poured the driveway prematurely. Seitz and Johnson proceeded with setting the position for the gate posts, using flags to mark the post locations before digging the holes.

customized angles to accommodate the driveway slope. Due to the prematurely poured driveway, Advanced Welding had to route the electrical service around the driveway and the induction loops had to be cut into the concrete. Advanced Welding did not charge Seitz for this additional work. Advanced Welding installed the 2020 gate in accordance with the approved design.

Advanced Welding sent its final invoice, which showed a balance of $10,398. Seitz never paid the balance and filed suit the next day for breach of contract and a violation of the MMPA. Advanced Welding counterclaimed for breach of contract and sought attorney's fees and damages under section 431.180.

A bench trial was held. At trial, Seitz made no objection or argument that the UCC preempted section 431.180 or that the UCC provided the exclusive remedies that a seller of goods could seek.[4] While the trial court asked the parties about the UCC's applicability, the parties only discussed it in the context of whether the acts of the parties constituted acceptance or rejection of the gate. Seitz argued, "I think your question was more to the rejection of the gate. And there's a rule in the UCC about rejection and resale and those kinds of things[.]" There was never any discussion nor any objection raised that the UCC prevented Advanced Welding from seeking attorney's fees under section 431.180.

Seitz did not file any authorized after-trial motion. He did file an eight-page proposed judgment. The trial court rejected Seitz's claims, granted Advanced Welding's

---

[4] In fact, Seitz initially argued the UCC doesn't apply: "I haven't looked at it close under the UCC. They're certainly, potentially a seller of goods under the UCC. I think this was a consumer transaction. It's a gate for a personal residence. And so, no, I don't think it's applicable here."

claim for breach of contract and awarded attorney's fees under section 431.180. Seitz appeals from that judgment.

**Attorney's Fees and Interest Under Section 431.180 (Points 1 and 2)**

In points 1 and 2, Seitz challenges the trial court's award of attorney's fees and interest under section 431.180. According to Seitz, the trial court lacked authority to award attorney's fees and interest under section 431.180 because the UCC provides the exclusive remedies for a contract for goods (point 1) and because section 431.180 required the trial court to segregate and allocate between fees that are recoverable and fees that are not recoverable (point 2). We cannot reach the merits on these points because they are not preserved for our review.

Seitz offers three arguments for why these issues are preserved or need not be preserved. First, Seitz claims he properly preserved these points through paragraph 38 in his proposed judgment. Next, he argues he did not need to file a motion for new trial to preserve this matter for appellate review under Rule 78.07(b). Finally, he argues these issues can be raised for the first time on appeal because they raise questions of the trial court's "jurisdiction" to enter such a judgment. None of these arguments are convincing.

"To preserve an issue for appeal, it must be presented to the trial court." *Matter of O'Reilly*, 640 S.W.3d 128, 130 (Mo. App. S.D. 2022). Under Rule 78.07(b), a party need not file a motion for new trial in a bench-tried case to preserve an issue for appellate review, "*if the matter was previously presented to the trial court*." Rule 78.07(b) (emphasis added). The reasons for this requirement are to eliminate error, to give the trial court an opportunity to rule intelligently, and to avoid the delay, expense, and hardship of an appeal and retrial. *Schieve v. Meyer*, 628 S.W.3d 726, 732 (Mo. App.

5

W.D. 2021). This purpose is frustrated if the claimed error receives its first review in the appellate court. *Id.*

This appeal is the first time Seitz has raised the issues he raises in points 1 and 2. Seitz claims his proposed judgment alerted the trial court of the issues but nothing in it argues the trial court lacked authority to award attorney's fees and interest because the UCC was the exclusive remedy. The proposed judgment contained only one paragraph related to Advanced Welding's counterclaim for a breach of contract seeking attorney's fees and interest under section 431.180:

> 38. The [trial court] concludes that the Prompt Pay Act does not apply to the contract at issue which is predominantly for a movable good. See RSMo. § 431.180.4 ("design or construction work shall include design, construction . . . of any building, roadway or other structure of improvement to real property."). Further, at the time demand for payment was made, [Advanced Welding] was in material breach of the contract and failed to cure. [Advanced Welding]'s claim must fail.

"It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." ***Brown v. Brown***, 423 S.W.3d 784, 787 (Mo. banc 2014). Because Seitz did not call attention to the errors raised in points 1 and 2 at trial, he has not preserved those issues for our review.

Nor are we persuaded by Seitz's argument that he can raise these issues for the first time on appeal because they are "jurisdictional." Seitz's argument mistakenly assumes that "jurisdiction" broadly extends to questions of the trial court's authority to enter an award under a particular statute. The Supreme Court of Missouri has made it clear such questions are not "jurisdictional." ***J.C.W. ex rel. Webb v. Wyciskalla***, 275 S.W.3d 249, 252 (Mo. banc 2009). "Jurisdiction" refers to only subject matter

6

jurisdiction and personal jurisdiction. *Id.* Seitz makes no argument the trial court lacked personal jurisdiction or subject matter jurisdiction. Rather, he claims the trial court lacked the authority to award attorney's fees and interest under a statute because it was preempted by another statute. That is not a question of the trial court's jurisdiction. It is a question of the trial court's authority. "Unpreserved authority arguments framed as jurisdictional arguments are waived." *Ball v. Ball*, 638 S.W.3d 543, 550 (Mo. App. E.D. 2021). Seitz has waived points 1 and 2 because they are not preserved.

### MMPA Claim (Points 3 and 4)

In points 3 and 4, Seitz argues the trial court erred in entering judgment against Seitz on his MMPA claim, "because the purchase of the 2020 [g]ate was primarily for personal, family, or household purposes" (point 3) and because Advanced Welding "concealed, suppressed, or omitted material facts related to the sale of the 2020 [g]ate" (point 4). Both of these points are predicated on and rely on factual inferences and evidence contrary to the judgment, ignoring our standard of review. For that reason, they fail.

In a bench-tried case, the judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010). "[T]he trial court's judgment is presumed valid, and the burden is

7

on the [appellant] to demonstrate its incorrectness." *McElvain v. Stokes*, 623 S.W.3d 769, 774 (Mo. App. W.D. 2021) (internal citations and quotations omitted).

In both points, Seitz urges us to apply *de novo* review because statutory interpretation and "whether a statute applies to a given set of facts [are] question[s] of law to be reviewed *de novo*." But the thrust of his arguments is not that the trial court misinterpreted the language of the MMPA or failed to apply the MMPA. His arguments are essentially that he proved each of the elements of his claim, so the trial court erred in denying him relief under the MMPA. In support of these arguments, Seitz relies on the evidence that conflicts with the trial court's findings and supports Seitz's position.[5] These types of arguments necessarily involve review of the trial court's factual determinations, which require a different standard of review than questions of law. Under such fact-based challenges, we must defer to the trial court's assessment of the evidence because the trial court is in a better position to judge the credibility of witnesses directly and their sincerity and character "and other trial intangibles that may not be revealed by the record." *Carpenter v. Carpenter*, 689 S.W.3d 765, 772 (Mo. App. W.D. 2024) (quoting *Douglass v. Douglass*, 570 S.W.3d 130, 134 (Mo. App. W.D. 2019)).

By constructing his argument around the evidence and factual inferences therefrom, Seitz has pivoted from a misapplication-of-law challenge to either a not-supported-by-substantial-evidence or against-the-weight-of-the-evidence challenge. *See Estate of Collins by and through Collins v. Collins*, 648 S.W.3d 871, 877-78 (Mo. App. S.D. 2022). These types of challenges require an appellant to follow certain analytical

---

[5] For example, Seitz's argument in point 3 includes a heading stating "The parties' testimony indicates that the 2020 [g]ate was purchased for personal, family, or household purposes." That is a fact-based argument. Likewise, point 4 similarly relies on fact-based arguments (*e.g.,* "Advanced Welding knew that the dimensions had changed but failed to disclose those changes to Seitz.").

steps, and the failure to follow those steps dooms an appellant's challenge.  *Id.* at 878.

The steps for a not-supported-by-substantial-evidence challenge are:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Houston,* 317 S.W.3d at 187.  An against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.*

Seitz dooms his argument by failing to follow the required analytical steps. Instead of identifying the evidence favorable to the challenged propositions, Seitz identifies the evidence and inferences favorable to his position.  But these inferences were rejected by the trial court, and are contrary to the trial court's judgment.  "Under our standard of review, we are required to disregard inferences contrary to the judgment" and

9

"defer to the trial court's assessment of the evidence." ***Estate of Elder v. Estate of Pageler***, 564 S.W.3d 742, 748 (Mo. App. S.D. 2018) (internal quotations and citations omitted). We are not at liberty to reweigh evidence and we are bound by the trial court's credibility findings. ***Interest of D.E.P.***, 700 S.W.3d 352, 355 (Mo. App. S.D. 2024). Seitz's failure to follow the required analytical framework deprives his argument of any analytical or persuasive value. Points 3 and 4 are denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C. J. – CONCURS

JEFFREY W. BATES, J. – CONCURS