

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF: F.P.L.,     )
       )
     Appellant,     )
       )
v.     )     WD87009
       )
JUVENILE OFFICER,     )     Opinion filed:  March 25, 2025
       )
     Respondent.     )

**APPEAL FROM THE CIRCUIT COURT OF DAVIESS COUNTY, MISSOURI**
**THE HONORABLE MICHAEL R. LEAMER, JUDGE**

Division One:  Gary D. Witt, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

F.P.L. appeals the judgment of the Circuit Court of Daviess County ("juvenile court"), which found that he was repeatedly and without justification absent from school while subject to compulsory school attendance, a status offense under section 211.031.1(2), RSMo.[1] On appeal, F.P.L. asserts the Juvenile Officer did not establish he was subject to compulsory school attendance. Finding no error, we affirm.

---

[1] All statutory citations are to the Revised Statutes of Missouri 2016, as updated through the 2022 Cumulative Supplement.

**Factual and Procedural Background**

In May 2023, the Juvenile Officer filed a petition in the juvenile court alleging that F.P.L. was "in need of care and treatment" because "[i]n violation of Section 211.031.1(2)(a), RSMo, [F.P.L.], while subject to compulsory school attendance, [was] repeatedly and without justification absent from school, in that as of April 24, 2023, while enrolled at Tri-County R-VII Middle School, [F.P.L.] had an attendance rate of 80.5 percent based on total school hours during the 2022-2023 school year." The juvenile court conducted an adjudication hearing, at which the following evidence was adduced.

During the 2022-2023 school year, F.P.L. was in eighth grade and attended Tri-County R-VII Middle School. The school attendance policy allowed for students to have four excused absences per semester. After that, absences could only be excused with a doctor's note. After eight unexcused absences, a student failed his classes. The attendance policy was provided to all students and parents, and was available on the school district's website.

The school's attendance records for the 2022-2023 school year revealed that, as of April 24, 2023, F.P.L. had missed more than 25 full days of school, and his attendance rate was 80.5 percent.[2] The school had not been made aware that F.P.L. had any medical

---

[2] Although the attendance records reflect that, according to F.P.L.'s parents, some of those absences were due to illness, the records do not indicate a doctor's note was ever provided to the school. The attendance records also indicate F.P.L. was absent because of out-of-school suspensions, he "just didn't feel like coming to school," and he "was too sore from working out." There were numerous days where the school attempted to contact F.P.L.'s parents about an absence, but either the school could not reach his parents or they were unaware or "didn't know what to say" about F.P.L. being absent.

condition or learning disability that would prevent him from attending school or would explain his excessive absences. F.P.L. was not on an IEP, nor did he have a 504 plan, which are types of plans that provide support and services for students with disabilities. F.P.L. was not being homeschooled.

The secretary at F.P.L.'s school ("Secretary") was in charge of tracking attendance. F.P.L. lived half a mile from the school, and Secretary made arrangements with F.P.L.'s parents to give him and his brother a ride to school. Sometimes F.P.L. did not come out of the house when she arrived, and F.P.L.'s brother "would just tell [her] he wasn't coming today." When Secretary asked F.P.L. why he was missing so much school, he said he "was just bored" and he "didn't want to be there."

The principal at F.P.L.'s school was the principal of "pre-k through 12" at the school district ("Principal"). She had known F.P.L. since she started working at the district, when F.P.L. was in fourth grade. Principal contacted F.P.L.'s parents about his absences by phone and by letter. F.P.L. received after-school detentions and suspensions and attended Saturday school because of his attendance issues. The school tried to "find some extra ways" to get him to school, including having Secretary pick him up. Despite these efforts, F.P.L.'s attendance did not improve, and Principal reached out to the Juvenile Office.

At the time of the adjudication hearing in February 2024, F.P.L. was 16 years old and still in the eighth grade. He should have been a freshman, but he was retained one year because he had not yet finished his eighth-grade coursework.[3]

---

[3] All evidence at the adjudication hearing was presented by the Juvenile Officer; F.P.L. did not offer any evidence.

At the conclusion of the adjudication hearing, the juvenile court found that "the Juvenile Office ha[d] met its burden, specifically under 211.031.1, subsection 2, with respect to school attendance," and found "in favor of the Juvenile Office." The juvenile court then conducted a dispositional hearing, after which it entered its judgment. The juvenile court found the allegations in the petition were true, sustained the petition, and found F.P.L. was "in need of care and treatment under the supervision of the Court." F.P.L. was "made a ward of the Court," and was "placed on probation for an indeterminate period of time under supervision of the Juvenile Office, under the terms and conditions affixed by the Juvenile Office." The juvenile court also ordered F.P.L. to comply with various conditions related to his school attendance and instruction.

F.P.L. appeals.

## Standard of Review

"We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re B.O.*, 595 S.W.3d 506, 509 (Mo. App. W.D. 2020). We consider "the facts presented in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment" and ignore all evidence to the contrary. *In re S.F.*, 682 S.W.3d 841, 845 (Mo. App. W.D. 2024). Questions of law are reviewed *de novo*. *In re B.O.*, 595 S.W.3d at 509.

## Analysis

In his sole point on appeal, F.P.L. asserts that the juvenile court erred "in sustaining

4

the Petition because there was insufficient evidence from which the juvenile [court] could find [he] was in need of care and treatment under section 211.031.1(2)(a) . . . in that there was no evidence [F.P.L.] was subject to compulsory school attendance."

In response, the Juvenile Officer argues "[t]he question of whether F.P.L. was subject to compulsory school attendance goes to the issue of whether the [juvenile court] had personal jurisdiction under § 211.031.1(2)(a)," and because F.P.L. "did not raise the defense of lack of personal jurisdiction," he waived the defense. The Juvenile Officer contends we should deny F.P.L.'s point on this basis. We disagree.

Section 211.031.1(2)(a) provides that the juvenile court "shall have exclusive original jurisdiction in proceedings" involving a "child who may be a resident of or found within the county and who is alleged to be in need of care and treatment" because the child "while subject to compulsory school attendance is repeatedly and without justification absent from school[.]" The Juvenile Officer asserts section 211.031.1(2)(a) "provides the elements for having personal jurisdiction" over a juvenile, and the juvenile court would not have personal jurisdiction over F.P.L. if he "was not subject to compulsory school attendance." The Juvenile Officer's argument, however, conveys a fundamental misunderstanding of personal jurisdiction.

"Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). "Personal jurisdiction is, for the most part, a matter of federal constitutional law." *Id.* "In modern terms, personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or

5

interests," and "when a court says that it lacks personal jurisdiction, it means simply that the constitutional principle of due process bars it from affecting the rights and interests of a particular person." *Id.* at 252-53. Generally, a Missouri state court has personal jurisdiction over an individual residing in or found within the state who receives service of process in an authorized manner. *See id.* at 253-54 (stating "the power of the state courts to exercise jurisdiction over persons within the state" is "unquestioned," and finding the circuit court had "the power to render a judgment that bind[ed] the parties, who both [were] residents of Missouri; [t]herefore, it ha[d] personal jurisdiction"); *In re C.J.G.*, 219 S.W.3d 244, 248 (Mo. banc 2007) ("Normally, there must be service of process in an authorized manner for the court to acquire jurisdiction to determine the rights and liabilities of the defendant," and the juvenile court's "failure to provide adequate notice meant that it did not have personal jurisdiction over the father"[4]); *see also In re S.J.M.*, 453 S.W.3d 340, 343 (Mo. App. E.D. 2015) ("Here, personal jurisdiction is proper as it is undisputed that all parties to this action are Missouri residents and appeared voluntarily before the court.").

Contrary to the Juvenile Officer's argument, F.P.L. does not raise any challenge to personal jurisdiction on appeal. He does not argue that he was residing in or found in another state, that he did not receive proper service or notice of this action, or that the juvenile court otherwise lacked the power to require him to respond to this legal proceeding. Rather, F.P.L. argues there was an insufficient evidentiary basis for the

---

[4] "A claim of lack of personal jurisdiction may be waived when a defendant makes no motion or pleading on the issues but otherwise subjects himself to the jurisdiction of the court." *In re C.J.G.*, 219 S.W.3d at 248.

6

juvenile court to find one of the required elements of the status offense alleged. This is not a challenge to the juvenile court's personal jurisdiction. *See In re K.R.T.*, 505 S.W.3d 864, 868 (Mo. App. W.D. 2016) ("Father's current complaint that the trial court had no factual basis sufficient to support assuming jurisdiction over the Children . . . does not implicate either subject-matter or personal jurisdiction."[5]).

For these reasons, F.P.L.'s claim on appeal should not be denied on the basis that he waived the defense of lack of personal jurisdiction. However, we find that denial is warranted on the basis that sufficient evidence established he was subject to compulsory school attendance.

Section 167.031—referred to as the "compulsory attendance law"—mandates that a child of a certain age be enrolled in some type of school, and that the child attend "not less than the entire school term." *In re J.B.*, 58 S.W.3d 575, 579 (Mo. App. W.D. 2001) (quoting § 167.031.1). The statute effectively defines when a child is subject to compulsory school attendance. Pursuant to the statute, a child between the ages of seven and "the compulsory attendance age for the district"—here, age seventeen[6]—shall "attend regularly

---

[5] Although many sections in Chapter 211—including section 211.031—speak in terms of the "jurisdiction" of the juvenile court, we have held that, in light of the Missouri Supreme Court's decision in *Webb*, "'jurisdiction' in this context should be read 'authority.'" *In re P.L.S.*, 651 S.W.3d 885, 889 n.3 (Mo. App. W.D. 2022); *see also In re N.J.B.*, 327 S.W.3d 533, 535 n.2 (Mo. App. S.D. 2010) ("A determination that a particular juvenile's circumstances meet the criteria set forth in section 211.031.1 has commonly been referred to as a finding that the juvenile was within the 'jurisdiction' of the juvenile division of the circuit court," however "jurisdiction" in this context is not a "reference to either subject-matter or personal jurisdiction.").

[6] The "compulsory attendance age for the district" is defined as "[s]eventeen years of age or having successfully completed sixteen credits towards high school graduation in all other cases," with a "completed credit towards high school graduation" being defined as "one hundred hours or more of instruction in a course." § 167.031.6(2), .7. The evidence was that F.P.L. had not yet finished

some public, private, parochial, parish, home school or a combination of such schools," unless an exception applies. *See* § 167.031.1. Only two exceptions could be applicable to F.P.L.:

> (1) A child who, to the satisfaction of the superintendent of public schools of the district in which he resides, or if there is no superintendent then the chief school officer, is determined to be mentally or physically incapacitated may be excused from attendance at school for the full time required, or any part thereof;

> (2) A child between fourteen years of age and the compulsory attendance age for the district may be excused from attendance at school for the full time required, or any part thereof, by the superintendent of public schools of the district, or if there is none then by a court of competent jurisdiction, when legal employment has been obtained by the child and found to be desirable, and after the parents or guardian of the child have been advised of the pending action[.][7]

§ 167.031.1(1), (2). Applying these standards to the present case, F.P.L. would be subject to compulsory school attendance, and thus required to regularly attend a public, private, parochial, parish, home school, or a combination thereof, if he were between the ages of seven and seventeen, unless his absences were excused under the exceptions for (1) mental or physical incapacitation or (2) legal employment.

---

eighth-grade coursework, and thus he had not successfully completed any credits toward high school graduation. We note there is a separate definition of "compulsory attendance age for the district" applicable to "metropolitan school districts," *see* § 167.031.6, however that definition is not applicable here, *see* § 160.011(6) (defining a "metropolitan school district" as "any school district the boundaries of which are coterminous with the limits of any city which is not within a county").

[7] The Juvenile Officer describes a third possible exception relating to mental or behavioral health concerns, however this exception does not appear in the applicable version of section 167.031. The exception first appears in the current version of the statute, which went into effect in 2024, after the events at issue in this matter.

The evidence and reasonable inferences therefrom established F.P.L. was subject to compulsory school attendance. F.P.L was fifteen years old during the relevant time period, was enrolled at Tri-County R-VII Middle School and no other school, and was not being homeschooled. He did not have a medical condition or learning disability, and he was not on an IEP or 504 plan, indicating he did not have any disabilities. Many of F.P.L.'s absences were unexplained. Reasons that were given for his absences included illness (specifically, "stomach was hurting," had "the sniffles or a cold," was "sick"), out-of-school suspension, boredom, he "just didn't feel like coming to school," and he was "too sore from working out"; F.P.L. was never reported absent due to being mentally or physically incapacitated or due to legal employment. And there was no evidence that, to the satisfaction of school authorities, F.P.L. had been determined to be physically or mentally unable to attend school, or that school authorities had excused him on the grounds of legal employment, as contemplated by the exceptions set forth in section 167.031.1. Instead, the evidence established that school authorities tried "to find some extra ways" to get him to school—including having Secretary provide him transportation—and sanctioned F.P.L. for his excessive absences with detentions, suspensions, and Saturday school.

For these reasons, we find there was sufficient evidence that F.P.L. was subject to compulsory school attendance. *Cf. State v. Williams*, 673 S.W.3d 467, 475-77 (Mo. banc 2023) (in criminal prosecution of parents for failing to cause their children to attend school on a regular basis in violation of section 167.031, sufficient evidence supported the parents' convictions where "each child had multiple absences for which the parent failed to provide

9

any explanation" and "[t]his nonattendance was not excused by any circumstance provided for in the statute"). The juvenile court thus did not err in finding F.P.L. was in need of care and treatment under section 211.031.1(2)(a).

Point denied.

## Conclusion

The judgment of the juvenile court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.